[No. 24306-7-II. Division Two. August 11, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY ROGERS JONES, *Appellant*.

---

[6] RCW 13.40.020(18).

*Linda J. King*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

MORGAN, J. — The main questions in this appeal are whether *Edwards v. Arizona*[1] applies after a defendant has been out of custody for a substantial period of time, and whether the double jeopardy clause applies to noncapital sentencing enhancement proceedings. The answer to each question is no.

On October 5, 1995, shortly after 2:00 p.m., a white man wearing a baseball cap and sunglasses robbed a bank at gunpoint. When he left the bank, he got into the passenger

---

[1] *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981).

side of a yellow pickup driven by a second man. Witnesses saw that the pickup had Montana plates, but they could not describe its driver. The pickup sped away in the direction of a grocery store called Top Foods.

Within a short time, a yellow pickup with Montana plates entered the Top Foods parking lot and skidded to a stop. A black male jumped out of the driver's side, and a white male jumped out of the passenger side. Both got into a gray Chrysler K-car, which immediately sped toward State Route 512.

Police impounded the yellow pickup and contacted its owner. He indicated that his truck had been stolen, and that he had a 9 mm handgun in the glove compartment. The gun was not in the truck at the time of impound.

Officer Matison soon spotted a gray Chrysler K-car. It was occupied by three men, two white and one black. The officer followed the K-car onto SR 512 and then onto Jovita Boulevard. He waited for other officers before attempting a stop.

When several officers were in position, they activated their lights and sirens. The K-car accelerated, and the officers pursued. During the pursuit, a white male passenger in the K-car fired "two direct rounds at Officer Matison's patrol car,"[2] three more shots at a second officer, and at least one shot at a third officer. A bullet shattered Matison's windshield, and a bullet hit the third officer's car.

The K-car turned from Jovita Boulevard onto a dead-end street. The officers lost sight of it for a moment, then found it abandoned. Inside were sunglasses, the baseball hat used in the robbery, an empty nickel-plated pistol, loose cash, and documents in the names of Bobby Binford and James McCormack. Money stolen from the bank was strewn in the immediate area.

Within a short time, an officer saw a white man jogging along the side of the road. The man hid before he could be

---

[2] Report of Proceedings at 511.

contacted. When a K-9 team found him, he was identified as James McCormack.

Meanwhile, a citizen flagged down Officer Waddell. The citizen said that he had been driving out of his driveway on Jovita Boulevard when he felt a "jarring" in the back of his pickup.[3] He turned to look, and observed a black man curled up in the bed of the pickup. The man said, "Just keep on going[,]"[4] but the citizen ordered him out. The citizen last saw the man, whom he later identified as Larry Rogers Jones, walking along Jovita Boulevard.[5]

Waddell soon observed Jones, who was still walking on Jovita Boulevard. He was dirty, with what appeared to be fresh "grass stains and little bits of debris, bush-type things on him."[6] He also was "breathing heavily" and "sweating profusely."[7]

Jones was arrested and advised of his *Miranda*[8] rights. Although he initially agreed to talk, he said after only a few questions that he "might want to talk to a lawyer now."[9] The officers ceased questioning and said Jones would have to initiate further conversation.

Four hours later, Jones was contacted by detectives and readvised of his *Miranda* rights. He signed a written waiver of rights and did not ask to speak with an attorney. His earlier equivocal request for counsel was not clarified because the detectives did not know about it. He was

---

[3] Report of Proceedings at 552.

[4] Report of Proceedings at 552.

[5] There appears to be some confusion over the appellant's name. In his first appeal, we remanded for new trial under a caption that read, "*State v. Lawrence Jones.*" *State v. Jones*, 89 Wn. App. 1002, 1998 WL 34632, 1998 Wash. App. LEXIS 134 (No. 20792-3-II). The clerk's papers in this second appeal disclose an information and judgment with the name, "*State v. Larry Rogers Jones.*" We use the name reflected in the clerk's papers.

[6] Report of Proceedings at 579.

[7] Report of Proceedings at 579.

[8] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

[9] Report of Proceedings at 14, Clerk's Papers at 269.

released later the same evening, after making several statements.[10]

Sometime later, the police found Jones' and McCormack's fingerprints on the K-car and Binford's fingerprints on the yellow pickup. They learned from McCormack's wife that McCormack and Jones were friends, and that she, McCormack, Jones and Jones' wife had dined together on several occasions. The police found the stolen 9 mm handgun behind a tree stump on Jovita Boulevard.

On October 26, Jones was rearrested and readvised of his *Miranda* rights. He waived his rights without asking for counsel, and he was not asked to clarify his October 5 equivocal request for counsel. He told the police that on October 5 he and his wife had been arguing while driving, she had kicked him out of the car, and he had wound up walking along Jovita Boulevard. He claimed never to have met McCormack and Binford, and never to have been in the yellow pickup or the K-car.

The State charged Jones with three counts of first degree assault (Counts I, II and III), one count of first degree robbery (Count IV), one count of taking a motor vehicle without permission (Count V), and one count of theft of a firearm (Count VI). In each count except the last, the State alleged that Jones had been armed with a deadly weapon and firearm, and that his sentences should be enhanced pursuant to RCW 9.94A.125 and RCW 9.94A.310(3)(a).

A jury found Jones guilty on all counts. It could not agree on whether Jones had been armed with a firearm during the commission of Counts I-IV, although it did agree that Jones had not been armed with a firearm during the commission of Count V. Jones moved for a mistrial on Counts I-IV, and the State asked for sentencing without the enhancements. The trial court sentenced without the enhancements.

Jones appealed to this court, and we granted a new trial

---

[10] These statements are not in issue here. The trial court later suppressed them, and the State has not appealed that ruling.

for reasons not pertinent here.[11] After remand, the State realleged three counts of assault in the first degree (Counts I-III), robbery in the first degree (Count IV), taking a motor vehicle without permission (Count V), and theft of a firearm (Count VI). In Counts I-IV, but not in Counts V or VI, the State realleged deadly weapon and firearm enhancements.

Before the second trial, Jones moved to suppress his October 5 statements and his October 26 statements. The court suppressed the former but admitted the latter.

Also before the second trial, Jones moved to dismiss the sentencing enhancements alleged in Counts I-IV, based on double jeopardy. The trial court denied the motion.

A second trial was held, and the jury found Jones guilty on Counts IV-VI. The jury also found that Jones had been armed with a deadly weapon/firearm during the commission of Count IV. It could not agree on Counts I-III, and it did not reach the sentencing enhancements alleged therein.

After the second trial, Jones and the State entered into a plea bargain. Jones pleaded guilty to two counts of assault in the second degree, and the State agreed not to seek a third trial on Counts I-III. Thus, Counts I-III are not in issue on this appeal.

At sentencing, the trial court imposed 70 months for each second degree assault, 204 months for robbery (Count IV), 12 months for unlawfully taking a motor vehicle (Count V), and 48 months for theft of a firearm (Count VI), all to run concurrently. The robbery sentence included a 60-month firearm enhancement pursuant to RCW 9.94A.310(3)(a). Jones then filed this appeal, in which the main issues are those noted at the outset.

## I. EDWARDS v. ARIZONA

Jones argues that the police violated *Edwards v. Ari-*

---

[11] *Jones*, No. 20792-3-II, 1998 WL 34632, at *3.

zona[12] when, on October 26, they initiated questioning without clarifying the equivocal request for counsel that Jones had made on October 5. Between October 5 and October 26, Jones was not in custody.

■ *Edwards v. Arizona* holds that once an accused "expresse[s] his desire to deal with the police only through counsel,"[13] he may not be interrogated further "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."[14] *Davis v. United States*[15] elaborates on *Edwards* by holding that "[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."

Washington follows *Edwards* but not *Davis*. When a Washington accused requests counsel equivocally, "[a]ny questioning after the equivocal assertion of the right to counsel must be strictly confined to clarifying the suspect's request."[16]

Washington courts have not addressed whether *Edwards* and *Robtoy* apply when the defendant has been out of custody for a substantial period of time. Other courts, however, have held that *Edwards* does not apply.[17] In *People v. Trujillo*, for example, the accused received his

---

[12] *Edwards*, 451 U.S. at 484-85.

[13] *Edwards*, 451 U.S. at 484.

[14] *Edwards*, 451 U.S. at 484-85; *see State v. Robtoy*, 98 Wn.2d 30, 37, 653 P.2d 284 (1982).

[15] *Davis v. United States*, 512 U.S. 452, 461-62, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994).

[16] *Robtoy*, 98 Wn.2d at 39; *see also State v. Aten*, 130 Wn.2d 640, 665-66, 927 P.2d 210 (1996).

[17] *State v. Robtoy*, 98 Wn.2d 30, 653 P.2d 284 (1982). *See, e.g., United States v. Barlow*, 41 F.3d 935, 945-46 (5th Cir. 1994), *cert. denied*, 514 U.S. 1030 (1995); *Dunkins v. Thigpen*, 854 F.2d 394, 397 (11th Cir. 1988), *cert. denied*, 489 U.S. 1059 (1989); *United States v. Skinner*, 667 F.2d 1306, 1309 (9th Cir. 1982), *cert. denied*, 463 U.S. 1229 (1983); *Kochutin v. State*, 875 P.2d 778, 779 (Alaska Ct. App. 1994); *In re Bonnie H.*, 56 Cal. App. 4th 563, 65 Cal. Rptr. 2d 513, 514 (Ct. App. 1997); *People v. Trujillo*, 773 P.2d 1086, 1092 (Colo. 1989); *State v. Bymes*, 375 S.E.2d 41, 42 (Ga. 1989); *State v. Norris*, 244 Kan. 326, 768 P.2d 296, 303 (1989); *Common-*

*Miranda* warnings and requested an attorney. The police ceased questioning and released him. He was rearrested seven weeks later and readvised of his *Miranda* warnings. The police reinitiated questioning, and the accused made an incriminating statement. Noting that *Edwards* is designed to "counteract the inherent pressures of custodial interrogation,"[18] the court held that *Edwards* does not apply to "situations where a defendant has not been in continuous custody but is reinterrogated after being released from custody"; in such situations, the accused "is no longer under the inherently compelling pressures of continuous custody."[19] An exception might exist where a release is contrived, pretextual, or in bad faith,[20] but there is no suggestion of that here. Finding these authorities persuasive, we conclude that the police lawfully questioned Jones on October 26, even though they did not clarify his October 5 equivocal request for counsel.

## II. DOUBLE JEOPARDY

Jones argues that he suffered double jeopardy when the trial court imposed the 60-month sentencing enhancement on Count IV. We separately address the federal and state double jeopardy clauses.

The federal double jeopardy clause provides that no person "shall . . . be subject for the same offense to be twice

---

*wealth v. Galford*, 413 Mass. 364, 597 N.E.2d 410, 414 (1992), *cert. denied*, 506 U.S. 1065 (1993); *Commonwealth v. Wyatt*, 455 Pa. Super. 404, 688 A.2d 710 (1995), *appeal denied*, 699 A.2d 735 (1997); *State v. Kyger*, 787 S.W.2d 13, 25 (Tenn. Crim. App. 1989).

[18] *People v. Trujillo*, 773 P.2d 1086, 1091 (Colo. 1989) (quoting *Arizona v. Roberson*, 486 U.S. 675, 685, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988)).

[19] *Trujillo*, 773 P.2d at 1092; *see also Galford*, 597 N.E.2d at 414 ("When a defendant is released from custody, the coercive effect of custody disappears."); *In re Bonnie H.*, 65 Cal. Rptr. 2d at 526 ("Once released, the suspect is no longer under the 'inherently compelling pressures' of continuous custody where there is a reasonable possibility of wearing the suspect down by badgering police tactics to the point the suspect would waive the previously invoked right to counsel.").

[20] *See Dunkins*, 854 F.2d at 397 n.6; *Trujillo*, 773 P.2d at 1092; *In re Bonnie H.*, 65 Cal. Rptr. 2d at 526.

put in jeopardy of life or limb."[21] It "imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside," so long as the evidence produced at the first trial was sufficient to support conviction.[22] Nor does it bar the retrial of a non-capital sentencing enhancement, for it does not apply to non-capital sentencing proceedings or "restrict[] the length of a sentence imposed upon retrial after a defendant's successful appeal."[23] Here then, the federal double jeopardy clause did not bar retrial of the sentencing enhancement on Count IV.

The state double jeopardy clause provides that "no person shall . . . be twice put in jeopardy for the same offense."[24] The state clause generally has the same meaning as the federal clause.[25] Jones does not argue that the state clause differs from the federal clause in any way material to this case, so we assume—without so holding—that it does not. We conclude that Jones' double jeopardy argument is not well taken.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.

Review denied at 142 Wn.2d 1018 (2001).

---

[21] U.S. CONST. amend V.

[22] *United States v. DiFrancesco*, 449 U.S. 117, 131, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980), quoting *North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *State v. Corrado*, 81 Wn. App. 640, 647, 915 P.2d 1121 (1996).

[23] *Monge v. California*, 524 U.S. 721, 730, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998); *see DiFrancesco*, 449 U.S. at 135; *State v. Hardesty*, 129 Wn.2d 303, 310-11, 915 P.2d 1080 (1996); *see also Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981) (exception for capital cases only). *State v. Hennings*, 100 Wn.2d 379, 670 P.2d 256 (1983), would be consistent if decided today. It construed the meaning of the federal clause, which today is controlled by *Monge*.

[24] WASH. CONST. art. I, § 9.

[25] *State v. Gocken*, 127 Wn.2d 95, 97, 107, 896 P.2d 1267 (1995).