159 P.3d 486 (2007)
STATE of Washington, Respondent,
v.
James D. RADCLIFFE, Appellant.
No. 34447-5-II.
Court of Appeals of Washington, Division 2.
June 12, 2007.
*487 Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Appellant.
James C. Powers, Thurston County Prosecuting Attorney Office, Olympia, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, P.J.
¶ 1 James D. Radcliffe appeals his conviction of two counts of third degree child rape and one count of indecent liberties with forcible compulsion, arguing that the trial court should have suppressed his statement to the police after he made an equivocal request for an attorney, a prospective juror's comments tainted the jury pool, a jury instruction incorrectly defined forcible compulsion, and the trial court abused its discretion in denying him a suspended sentence under the Special Sex Offender Sentencing Alternative (SSOSA).[1] Finding no error, we affirm.

FACTS
¶ 2 S.K. testified that James D. Radcliffe, her mother's live-in boyfriend, began sexually abusing her when she was 12 years old. The abuse included multiple acts of penile-vaginal intercourse and oral sex. When she was 15, S.K. moved to Seattle to live with a relative, Joyce Maund.
¶ 3 In November 2004, when 16-year-old S.K. was visiting her mother, Radcliffe took her to a friend's house. He grabbed S.K. by the waist, sat in a chair, and pulled her into his lap. While S.K. struggled to break free of Radcliffe's grip, he pushed her shirt and bra up and pulled her jeans and underwear down. He then rubbed his penis against S.K.'s buttocks until he ejaculated on her. A few days later, S.K. reported the abuse to the police and gave them the clothing she had worn when Radcliffe ejaculated.
¶ 4 The following morning, the police arrested Radcliffe and transported him to the police station. Detective Shannon Barnes told him of S.K.'s complaint and advised him of his Miranda[2] rights. After Barnes read Radcliffe his rights, Radcliffe said he understood his rights and wanted to talk to her. Barnes described S.K.'s allegations and Radcliffe denied them. After about 10 minutes, Barnes turned the questioning over to Detective David Miller.
¶ 5 Radcliffe continued to deny S.K.'s allegations. But when Miller told him that the police had S.K.'s clothing and would test it to see if he had ejaculated on it, Radcliffe admitted that testing would reveal that he had ejaculated on S.K.'s clothing. He then told Miller that he had a sexual relationship with S.K.
¶ 6 When Miller said that he would get a tape recorder to record Radcliffe's story, Radcliffe responded that he did not know how much trouble he was in and did not know if he needed a lawyer. Miller said that he could not give any legal advice, but he again offered to read Radcliffe his rights. Radcliffe said that he knew what his rights were and he did not need Miller to read them again. Miller told Radcliffe that "the ball was in his court" and if he did not feel comfortable giving a taped statement, he could write out a statement or he could give an oral statement. Report of Proceedings (RP) (Oct. 3, 2005) at 99-100.
*488 ¶ 7 Radcliffe chose the last option and told Miller he began having sex with S.K. when she was 14 years old, that they had had sexual intercourse two times, and that she would perform oral sex on him and he would perform oral sex on her about once a month.
¶ 8 The State charged Radcliffe with one count of second degree child molestation, one count of second degree child rape, two counts of third degree child rape, and one count of indecent liberties with forcible compulsion.
¶ 9 Radcliffe moved to suppress his statements to Barnes and Miller. Radcliffe testified at the suppression hearing that Miller told him that the age of consent in Washington is 16 and that the outcome of S.K.'s allegations would likely be counseling and a no-contact order. Radcliffe also testified that he asked what his legal rights were multiple times and stated, "I want a lawyer," but Miller did not respond and continued to question him. RP (Oct. 3, 2005) at 133-34. The trial court initially decided that because Miller improperly questioned Radcliffe after Radcliffe's equivocal reference to an attorney, it would suppress Radcliffe's statements made after that point. But upon reconsideration and in light of a newly issued Division One opinion, the trial court ruled that Miller's continued questioning was not improper and therefore denied Radcliffe's motion to suppress.
¶ 10 Several months before trial, Radcliffe obtained an evaluation for the SSOSA program in hopes that the State would amend the charges and recommend a suspended sentence under that program. But the State declined to do so, and the case proceeded to trial.
¶ 11 During jury selection, one potential juror stated that he was acquainted with Radcliffe from the juror's job as a bartender and that he thought this could possibly affect his ability to be fair and impartial. The court briefly questioned the juror and later excused him in a closed session. Radcliffe moved to discharge the jury panel and seat a new one, arguing that the excused juror's statements tainted the entire jury pool. The trial court denied the motion.
¶ 12 During deliberations, the jury asked the trial court to clarify the forcible compulsion instruction. Over Radcliffe's objection, it restated the instruction by breaking the two definitions into two separate sentences.
¶ 13 The jury convicted Radcliffe of two counts of third degree child rape and one count of indecent liberties. The trial court imposed standard-range concurrent sentences for each count, denying Radcliffe's request for a SSOSA.

ANALYSIS

I. REQUEST FOR COUNSEL
¶ 14 Radcliffe argues that the trial court erred in admitting the statements he gave to the police after he said that he did not know if he needed a lawyer. We disagree.
¶ 15 We will uphold a trial court's CrR 3.5 findings of fact if substantial evidence supports them. State v. Broadaway, 133 Wash.2d 118, 131, 942 P.2d 363 (1997). Unchallenged findings are verities on appeal. Broadaway, 133 Wash.2d at 131, 942 P.2d 363. We review a trial court's legal conclusions de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
A. Findings of Fact
¶ 16 Radcliffe assigns error to the trial court's finding of fact 3 (Barnes informed Radcliffe of his Miranda rights and Radcliffe validly waived them); finding of fact 4 (Barnes questioned Radcliffe for about 10 minutes after the waiver and Radcliffe denied the allegations against him); finding of fact 7 (before Miller questioned Radcliffe, Miller asked him if Barnes had read him his rights and if he understood those rights and Radcliffe told Miller he understood his rights and did not wish Miller to inform him of his rights again); finding of fact 8 (Radcliffe initially denied the allegations against him but admitted to sexual activity with S.K. when confronted with potential DNA evidence); and finding of fact 9 (Radcliffe made an equivocal reference to his right to an attorney by stating that maybe he should contact an attorney and Miller offered to read Radcliffe his rights again, but Radcliffe *489 declined and voluntarily resumed answering Miller's questions).
¶ 17 Radcliffe makes no argument, however, pointing to the absence of evidence to support findings of fact 3, 4, 7, and 8. Accordingly, he has waived these assignments of error. State v. Thomas, 150 Wash.2d 821, 868-69, 83 P.3d 970 (2004). Moreover, the findings comport with Radcliffe's own testimony at the CrR 3.5 hearing and are clearly supported by substantial evidence.
¶ 18 With respect to finding of fact 9, Radcliffe maintains that he unequivocally requested a lawyer during Miller's questioning. Radcliffe testified that he said, "I want a lawyer" multiple times but Miller merely continued his questioning. RP (Oct. 3, 2005) at 134. But Miller testified that Radcliffe said only that he did not know if he needed a lawyer and that Radcliffe never specifically asked for an attorney.
¶ 19 A request is equivocal if further questions are needed to determine if the suspect has made a request. State v. Smith, 34 Wash.App. 405, 408-09, 661 P.2d 1001 (1983). Although whether a request is equivocal is a question of law, Smith, 34 Wash. App. at 408, 661 P.2d 1001, Radcliffe appears to challenge the trial court's finding that Radcliffe said that he did not know if he needed an attorney, not the court's conclusion that that statement was equivocal. Miller's testimony provides substantial support for the trial court's finding that Radcliffe made this statement. Although the trial court found all the witnesses generally truthful, it accepted Miller's version of Radcliffe's statement. We will not disturb a trial court's credibility determination. Thomas, 150 Wash.2d at 874, 83 P.3d 970. Substantial evidence supports finding of fact 9.
B. Equivocal Reference to an Attorney
¶ 20 Radcliffe next contends that the trial court erred in relying on Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), to conclude that Miller was not required to stop his questioning and clarify whether Radcliffe was invoking his right to an attorney when he equivocally referred to an attorney. Radcliffe maintains that State v. Robtoy, 98 Wash.2d 30, 653 P.2d 284 (1982), continues to govern equivocal requests for counsel in Washington.
¶ 21 Under the Fifth and Fourteenth Amendments to the United States Constitution,[3] the police must inform a suspect of his right to remain silent and to the assistance of an attorney before subjecting him to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court held that once a suspect has "clearly" asserted his right to counsel, the police may not subject him to further questioning until he has had an opportunity to confer with counsel, unless the suspect himself initiates further communication. Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880. The court noted that the Fifth Circuit had held that it was possible to conclude that a suspect had waived the right to counsel when a request for counsel was equivocal. Edwards, 451 U.S. at 486 n. 9, 101 S.Ct. 1880 (citing Nash v. Estelle, 597 F.2d 513 (5th Cir.1979) (en banc)).
¶ 22 The Washington Supreme Court addressed equivocal references to counsel under the Fifth and Fourteenth Amendments the following year in Robtoy. The court adopted the Fifth Circuit's rule that when a suspect makes an equivocal request for an attorney, an officer must limit further questioning to clarifying that request. Robtoy, 98 Wash.2d at 38-39, 653 P.2d 284 (citing Nash, 597 F.2d at 517-18).
¶ 23 But in 1994, the United States Supreme Court directly addressed equivocal references to counsel. Davis, 512 U.S. at 456, 114 S.Ct. 2350. In Davis, the court held that after a knowing and voluntary waiver of the Miranda rights, an officer may continue questioning unless and until a suspect unequivocally requests an attorney. Davis, 512 *490 U.S. at 461, 114 S.Ct. 2350. The court declined to extend the Edwards rule to equivocal requests for an attorney because to do so would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present. Davis, 512 U.S. at 459-60, 114 S.Ct. 2350. The Miranda warnings themselves provide the primary protection for suspects subject to custodial interrogation; a suspect must affirmatively invoke the additional protection Edwards provides. Davis, 512 U.S. at 460-61, 114 S.Ct. 2350. Requiring an unambiguous request for counsel also avoids forcing police officers to make judgment calls about statements that might or might not be requests for counsel. Davis, 512 U.S. at 461, 114 S.Ct. 2350.
¶ 24 A majority of the Washington Supreme Court has not addressed the effect of Davis on the Robtoy rule. In State v. Aten, 130 Wash.2d 640, 927 P.2d 210 (1996), a plurality of four justices, after concluding that the State did not present sufficient evidence to establish the corpus delicti of the crime, applied Robtoy without discussing Davis and concluded that the defendant's statements made after an equivocal request for counsel were admissible because the defendant had herself initiated further communication. Aten, 130 Wash.2d at 662, 665-66, 927 P.2d 210 (plurality). Four concurring justices reasoned that, in light of the conclusion that the State had not established the corpus delicti, it was unnecessary to discuss any further issues. Aten, 130 Wash.2d at 668, 927 P.2d 210 (Madsen, J., concurring). But the concurrence questioned the plurality's reliance on Robtoy in light of Davis, asserting that under Davis, the officers had no duty to cease questioning the defendant after her equivocal statement.[4]Aten, 130 Wash.2d at 669, 927 P.2d 210 (Madsen, J., concurring).
¶ 25 The divisions of the Court of Appeals have also addressed Davis's effect on the Robtoy rule, but have reached conflicting results. In State v. Copeland, 89 Wash.App. 492, 949 P.2d 458 (1998), without citing either Aten or Robtoy, we applied the rule from Davis that officers need not stop questioning a suspect after an equivocal reference to counsel. Copeland, 89 Wash.App. at 500-01, 949 P.2d 458. In State v. Jones, 102 Wash. App. 89, 6 P.3d 58 (2000), however, we said that "Washington follows Edwards but not Davis." Jones, 102 Wash.App. at 96, 6 P.3d 58. We cited both Robtoy and Aten, but we did not further discuss the issue. Jones, 102 Wash.App. at 96 n. 16, 6 P.3d 58 (citing Robtoy, 98 Wash.2d at 39, 653 P.2d 284; Aten, 130 Wash.2d at 665-66, 927 P.2d 210); see also State v. Aronhalt, 99 Wash.App. 302, 307, 994 P.2d 248 (2000) (applying rule from Robtoy).
¶ 26 Most recently, Division One recognized that Davis controls equivocal references to an attorney. State v. Walker, 129 Wash.App. 258, 275, 118 P.3d 935 (2005), review denied sub nom. State v. Garrison, 157 Wash.2d 1014, 139 P.3d 350 (2006). The Walker court noted that Robtoy "has continued to appear in Washington case law in spite of the Davis Court's clear directive," and it considered this court's statement in Jones to interpret Aten as a rejection of the Davis rule. Walker, 129 Wash.App. at 275 n. 46, 118 P.3d 935. But the court declined to assume that our Supreme Court would reject a directive from the United States Supreme Court without explanation and looked to Davis for guidance on the issue before it, an equivocal invocation of the right to remain silent. Walker, 129 Wash.App. at 275 n. 46, 118 P.3d 935.
¶ 27 We now hold that Davis, not Robtoy, is the controlling authority on how Miranda applies to a suspect's equivocal request *491 for an attorney. The United States Supreme Court grounded Miranda on the Fifth Amendment, and Robtoy relied on a suspect's rights under the Fifth and Fourteenth Amendments to the United States Constitution, not the Washington Constitution. Robtoy, 98 Wash.2d at 35, 653 P.2d 284. The United States Supreme Court is the final authority on the federal constitution. Cooper v. Aaron, 358 U.S. 1, 18, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). As the Walker court noted, our Supreme Court provided no rationale for rejecting a United States Supreme Court interpretation of the federal constitution and we will not presume that it intended to do so.[5]
¶ 28 The trial court did not err in accepting the Walker court's reasoning. Because Radcliffe's reference to an attorney was equivocal, Miller was not obligated to stop his questioning or to clarify Radcliffe's statement. Davis, 512 U.S. at 461, 114 S.Ct. 2350. Accordingly, the trial court properly admitted Radcliffe's statements at trial.
¶ 29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
HUNT and PENOYAR, JJ., concur.
NOTES
[1] RCW 9.94A.670.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. This provision applies to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
[4] The ninth justice dissented, arguing that there was sufficient evidence to establish the corpus delicti of the crime. Aten, 130 Wash.2d at 670, 927 P.2d 210 (Talmadge, J., dissenting). He did not address the admissibility of the defendant's statements to law enforcement. Aten, 130 Wash.2d at 670-73, 927 P.2d 210 (Talmadge, J., dissenting).

The only other Washington Supreme Court case to cite Davis is State v. Morley, 134 Wash.2d 588, 952 P.2d 167 (1998), which cites it for the proposition that a person wrongfully and unconstitutionally convicted by court-martial has the right to seek review by the United States Supreme Court, thus ensuring that courts-martial adhere to fundamental constitutional rights. Morley, 134 Wash.2d at 619, 952 P.2d 167.
[5] Article I, section 9 of the Washington Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." The Washington Supreme Court has held that the protection of Article I, section 9 is coextensive with that of the Fifth Amendment. State v. Earls, 116 Wash.2d 364, 374-75, 805 P.2d 211 (1991). Radcliffe does not suggest that the Washington Constitution provides greater protection than the federal constitution in this context nor does he provide this court with an analysis under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).