194 P.3d 250 (2008)
STATE of Washington, Respondent,
v.
James Daniel RADCLIFFE, Petitioner.
No. 80391-9.
Supreme Court of Washington, En Banc.
Argued June 26, 2008.
Decided October 23, 2008.
*251 James C. Powers, Thurston County Prosecuting Attorney Office, Olympia, WA, for Respondent.
Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Petitioner.
Kenneth Scott Kagan, Carney Badley Spellman, Nancy Lynn Talner, Attorney at Law, Seattle, WA, Amicus Curiae on behalf of American Civil Liberties Union.
J.M. JOHNSON, J.
¶ 1 When a police detective first questioned James Radcliffe about claims that he molested his girl friend's young daughter, Radcliffe was read his Miranda[1] rights and expressly waived them, going on to deny all allegations of sexual abuse. When a second detective took over the questioning, Radcliffe said something like, "I didn't know how much trouble I'm in, and I don't know if I need a lawyer." 4 Verbatim Report of Proceedings (Dec. 1, 2005) at 736. The second detective *252 offered to read Radcliffe his rights again. Radcliffe said no, he understood his rights. He then confessed. This confession is valid and properly admitted into evidence under the United States Constitution.
¶ 2 In 1982, this court, applying the United States Constitution's Fifth Amendment, stated that a suspect's equivocal request for an attorney forbids any further police questions except to clarify the request. State v. Robtoy, 98 Wash.2d 30, 39, 653 P.2d 284 (1982). Twelve years later, the United States Supreme Court clarified otherwise; under the Fifth Amendment, once a suspect has knowingly waived his right to an attorney, he must explicitly ask for an attorney or the police may continue questioning. Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Radcliffe argues that Robtoy requires excluding the confession here and reversing his conviction.[2] We disagree and affirm the Court of Appeals, which upheld admission of the confession and affirmed his convictions.

FACTS
¶ 3 Radcliffe lived with his long-term girl friend and her three daughters in the city of Lacey. The oldest child (S.K. for anonymity) went to live with her grandmother in her mid-teen years. In November 2004, when S.K. was 16 years of age, she traveled to Lacey to visit her mother. Radcliffe picked up S.K. and took her to the house of a friend of Radcliffe's. There, Radcliffe grabbed S.K., tried to take her clothes off, rubbed his penis against her buttocks, and ejaculated.
¶ 4 Apparently, this was not the first time Radcliffe had engaged in such conduct. According to S.K., Radcliffe had begun touching her inappropriately when she was 12. Ultimately, this abuse would include oral sex about once a month and, on two occasions, sexual intercourse. S.K. kept silent after all the preceding events, but this time was different. Whatever the reason, S.K. became determined to reveal Radcliffe's activities. S.K. told her school counselor, who immediately informed the Lacey police.
¶ 5 The police picked up Radcliffe the next day. They took him to the Lacey police station for questioning. Detective Shannon Barnes immediately read Radcliffe his Miranda rights, and it is agreed Radcliffe voluntarily, knowingly, and intelligently waived his rights at that time. Under her questioning, Radcliffe denied the allegations of sexual abuse. Detective Barnes was pregnant and keen to avoid stressful situations, so she handed the continued questioning over to Detective David Miller in the same room.
¶ 6 When Detective Miller offered to read Radcliffe his Miranda rights again, Radcliffe declined further Miranda repetition and stuck to his denial. Detective Miller then told Radcliffe about some of the State's significant evidence the police had, such as S.K.'s pants that were semen-stained (and could be tested for DNA (deoxyribonucleic acid)). At that point, Radcliffe made a statement that is at the center of this case.
¶ 7 There was no recording of that statement; Detective Miller did not tape his interview with Radcliffe nor did he take contemporaneous notes. Detective Miller did, however, write a report immediately after the interview concluded. According to Detective Miller, Radcliffe said he "didn't know how much trouble he was in and he did not know if he needed a lawyer." Report of Proceedings (Oct. 3, 2005) at 99. Radcliffe later claimed he explicitly asked for an attorney. The trial court made a factual finding resolving any dispute, finding Radcliffe "made an equivocal reference to his right to an attorney, stating that the [sic] maybe he should contact an attorney." Clerk's Papers (CP) at 160.
¶ 18 In response, Detective Miller then told Radcliffe that he could not offer legal advice and that the ball was in Radcliffe's court. The detective also offered to read Radcliffe his rights again. For the third time, Radcliffe knowingly waived his right to an attorney. Radcliffe then confessed, not only to the incident with S.K. the week before, but to *253 the entire sexual relationship with S.K. over the preceding several years.
¶ 9 Before trial, Radcliffe moved to suppress the confession in pretrial motions. The trial court first granted the motion, relying on Robtoy, 98 Wash.2d at 40, 653 P.2d 284. However, as part of a motion to reconsider, the State pointed out the United States Supreme Court's decision in Davis, 512 U.S. at 459, 114 S.Ct. 2350. The trial court then reconsidered and entered an order denying the motion to suppress the confession.
¶ 10 The case went to trial, the confession was admitted, and a jury convicted Radcliffe of two counts of third degree rape and one count of indecent liberties. CP at 259. The trial court gave Radcliffe a sentence of 114 months to life in prison. CP at 264. Radcliffe appealed and Division Two of the Court of Appeals affirmed. State v. Radcliffe, 139 Wash.App. 214, 159 P.3d 486 (2007). Radcliffe appealed to this court, and we granted the petition. State v. Radcliffe, 163 Wash.2d 1021, 180 P.3d 1293 (2008).

ANALYSIS
¶ 11 A criminal defendant has a right to a lawyer after the State files charges. This right springs from the Sixth Amendment to the federal constitution ("[T]he accused shall enjoy the right to ... the assistance of counsel for his defense.") and from article I, section 22 of the Washington Constitution ("[T]he accused shall have the right to appear and defend in person, or by counsel....").
¶ 12 The right to an attorney during interrogation, in contrast, does not come from the Sixth Amendment or article I, section 22 because the explicit right to counsel applies only after the police file charges. Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Heinemann v. Whitman County Dist. Court, 105 Wash.2d 796, 799, 718 P.2d 789 (1986).
¶ 13 Instead, the right to Miranda warnings arises from the right not to incriminate oneself. U.S. CONST. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself...."); WASH. CONST. art. I, § 9 ("No person shall be compelled in any criminal case to give evidence against himself...."); Miranda v. Arizona, 384 U.S. 436, 461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("`[W]herever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the fifth amendment... commanding that no person `shall be compelled in any criminal case to be a witness against himself.''") (quoting Bram v. United States, 168 U.S. 532, 542, 18 S.Ct. 183, 42 L.Ed. 568 (1897)).
¶ 14 Miranda rights, of course, may be waived. The government bears the burden of showing, by a preponderance, that the suspect understood his rights and voluntarily waived them. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Radcliffe agrees he understood his rights and voluntarily waived them, at first, in the interview at the police station.
¶ 15 Once waived, a suspect may ask for an attorney at any time. If he requests an attorney, all questioning must stop until he has an attorney or starts talking again on his own. Id. at 484-85, 101 S.Ct. 1880. The issue here is how explicit a suspect must be when asking for an attorney after he has already waived his Miranda rights.
¶ 16 Radcliffe claims that our decision in Robtoy, 98 Wash.2d 30, 653 P.2d 284, controls the issue under the Fifth Amendment. In that decision, we held that an equivocal request for an attorney by a suspect who has been read his Miranda rights foreclosed police questions on anything but clarifying the request. Id. at 39, 653 P.2d 284. We made the decision based only on the Fifth Amendment and in the absence of a direct United States Supreme Court ruling on the issue. Id. at 41, 653 P.2d 284.
¶ 17 That United States Supreme Court ruling came 12 years later in Davis, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362. The Court held that the later request must be explicit if the right to counsel has once been waived; an equivocal request will not do. When the United States Supreme Court decides an issue under the United States Constitution, all other courts must follow that Court's rulings. In re Habeas *254 Corpus of Scruggs, 70 Wash.2d 755, 760, 425 P.2d 364 (1967). As far as the Fifth Amendment is concerned, Davis states the law, not Robtoy.
¶ 18 We faced this issue once since 1994. In State v. Aten, 130 Wash.2d 640, 927 P.2d 210 (1996), the court faced five issues, and like many five issue cases, the court was unevenly split. Eight justices agreed that the State failed to prove the corpus delicti of the crime charged. Id. at 662, 927 P.2d 210 (Smith, J.), 668 (Madsen, J., concurring). Four reached further and, without citing Davis, applied Robtoy. Id. at 665-66, 927 P.2d 210. Four others refused to reach the issue and pointed out that Davis abrogated Robtoy. Id. at 669, 927 P.2d 210 (Madsen, J., concurring).
¶ 19 The split resulted in conflict at the Court of Appeals. Division Two applied Davis in State v. Copeland, 89 Wash.App. 492, 500-01, 949 P.2d 458 (1998), but then held, in passing, that Washington does not follow Davis. State v. Jones, 102 Wash.App. 89, 96, 6 P.3d 58 (2000). Five years later, Division One held that Davis controls in Washington. State v. Walker, 129 Wash. App. 258, 276, 118 P.3d 935 (2005). Division Two in this case held that Davis, not Robtoy, is the Washington rule. Radcliffe, 139 Wash. App. 214, 159 P.3d 486.
¶ 20 The issue is now squarely before us. Our answer is clear: the United States Supreme Court has decided the issue and we must follow its holding as it applies to the Fifth Amendment. Davis is the law under the federal constitution.
¶ 21 Radcliffe argues here that article I, section 9 of Washington's constitution provides greater protection than its federal counterpart. However, he failed to argue the issue at trial or in the Court of Appeals and did not raise the issue in his motion for discretionary review. We therefore do not address it. RAP 13.7(b) ("the Supreme Court will review only the questions raised in the motion for discretionary review,....").[3]
¶ 22 Applying the law to the facts, the trial court properly admitted Radcliffe's confession. The trial court heard testimony from Radcliffe and from both detectives who interviewed him. Radcliffe agrees he waived his rights to silence and an attorney. He claims that later he explicitly asked for an attorney. Detective Miller testified that Radcliffe's request was equivocal at best. The trial court found that Radcliffe said, "maybe [I] should contact an attorney." CP at 160. Substantial evidence supports this finding, so we must uphold it. State v. Broadaway, 133 Wash.2d 118, 131, 942 P.2d 363 (1997). The statement is clearly equivocal. Davis, 512 U.S. at 455, 114 S.Ct. 2350 ("`Maybe I should talk to a lawyer'" is equivocal. (quoting App. 135)). Therefore, Radcliffe's confession was properly admitted.

CONCLUSION
¶ 23 After a knowing waiver of his Miranda right to an attorney during police questioning, Radcliffe made, at best, an equivocal request for an attorney. Under the Fifth Amendment, this was not enough to suppress the confession that followed, which was clearly voluntary and with knowledge of his rights. Since the Court of Appeals held correctly, we affirm its decision.
WE CONCUR: GERRY L. ALEXANDER, C.J., SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, RICHARD B. SANDERS, DEBRA L. STEPHENS, JJ.
CHAMBERS, J. (concurring).
¶ 24 I agree in result with the majority. I write separately to emphasize that defendants always have a right to an attorney during a custodial interrogation. Davis v. United States, 512 U.S. 452, 457, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). It is a necessary procedural right that is required to protect the defendant's constitutional right against self-incrimination. Id. (quoting Michigan v. *255 Tucker, 417 U.S. 433, 443-44, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)). Nothing in the majority's holding should be construed as abrogating that right. Defendants must still be clearly informed of their right to an attorney and one must always be provided after an affirmative and unequivocal request.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] It is worthy of note that this court held Robtoy's confession admissible despite his, "Maybe I should call my attorney" reference. Robtoy, 98 Wash.2d at 32, 653 P.2d 284. That conviction was affirmed.
[3] The facts as found by the trial court are similar to facts in Robtoy, in which we held the officer acted properly when responding to an equivocal request. See supra note 2. Thus, it is not apparent that today's holding would have been different under Robtoy.