IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34924-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NATHAN J. CALVERT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Nathan Calvert appeals his convictions for

residential burglary and attempt to elude a police officer. He argues the trial court erred

when it denied his motion to suppress his custodial statements. He also argues the trial

court erred when it imposed the $200 criminal filing fee as part of the judgment and

sentence. We disagree and affirm.

## FACTS

Javier Zuniga and Sofia Aguilera returned home one evening to find an intruder in

their garage. The intruder fled, and Zuniga's daughter called the police. Spokane County

Sheriff's Corporal Jeff Thurman, together with his police K-9, responded to the call.

While en route, Corporal Thurman noticed a car driving without any headlights. He initiated a traffic stop. The car sped to get away, attempted to make a turn, and hit a parked vehicle. The driver, Nathan Calvert, exited the car and ran. Corporal Thurman and his K-9 tracked Calvert and found him beneath a vehicle. The K-9 bit Calvert, and Corporal Thurman placed Calvert under arrest.

Sheriff's Deputy Clay Hilton arrived to assist Corporal Thurman. Deputy Hilton searched Calvert for weapons. Deputy Hilton advised Calvert of his *Miranda*[1] rights. While Deputy Hilton advised Calvert of his rights, Calvert was yelling at Corporal Thurman about his injury. After Deputy Hilton fully advised Calvert of his rights, Deputy Hilton asked Calvert if he understood his rights. Calvert did not respond.

About 20 minutes later, Corporal Thurman went to the hospital to speak with Calvert. Calvert agreed to talk with Corporal Thurman. During the conversation, Calvert admitted that he had been in the garage when Zuniga and Aguilera arrived.

In addition to other charges,[2] the State charged Calvert with residential burglary and attempting to elude a police vehicle. Calvert's defense to the residential burglary

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] We do not discuss these other charges because they are unrelated to the subject incident and because Calvert pleaded guilty to them before trial.

2

charge was that he was not the person in the garage when Zuniga and Aguilar arrived.

His defense depended on having the admission he made to Corporal Thurman suppressed.

Calvert scheduled his CrR 3.5 hearing the day of trial. The State presented the

testimonies of the arresting officers. Calvert chose not to testify. The trial court denied

Calvert's suppression motion. Pertinent to the issue raised on appeal, the trial court

found:

> 3.2 The defendant was advised of his constitutional rights.
> 3.3 Although the defendant did not verbally acknowledge those rights, there is no evidence that he didn't understand these rights.
> 3.4 The State has established that the defendant understand [sic] these rights when he made statements on [the] scene and at the hospital.
> 3.5 These statements[3] were knowing, voluntary and intelligent.[4]

Clerk's Paper (CP) at 96.

After trial, the jury found Calvert guilty of residential burglary and attempting to

elude a police vehicle. The trial court later entered a judgment of conviction against

Calvert, sentenced him, and imposed various financial obligations including a $200

criminal filing fee.

---

[3] Both parties acknowledge that the proper inquiry is whether the waiver of *Miranda* rights was knowing, voluntary, and intelligent.

[4] Although these four paragraphs are listed under conclusions of law, they are findings of fact, and we treat them as such. *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007).

No. 34924-1-III
*State v. Calvert*

Calvert timely appealed.

## ANALYSIS

A.   KNOWING WAIVER OF *MIRANDA* RIGHTS

Calvert challenges findings 3.3-3.5, set forth above. He argues that substantial evidence does not support the trial court's finding that he knowingly waived his *Miranda* rights. He argues the uncontested evidence establishes he was yelling at Corporal Thurman while Deputy Hilton recited his *Miranda* rights and when Deputy Hilton asked him if he understood his rights, he did not acknowledge that he understood them. Based on this uncontested evidence, he argues the State failed to establish that he heard or understood his rights. And unless he understood his rights, he could not have validly waived them.

A trial court's CrR 3.5 findings of fact will be upheld on appeal if supported by substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997); *see State v. Radcliffe*, 164 Wn.2d 900, 907, 194 P.3d 250 (2008). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

4

At the suppression hearing, the State elicited the following testimony from Deputy Hilton concerning whether Calvert heard and understood his *Miranda* rights:

> Q.   Was there any indication that he did not hear you or did not understand that you were reading him his rights?
> A.   No.

Report of Proceedings (RP) at 31-32. This testimony is sufficient to persuade a fair-minded, rational person that Calvert heard the rights that had been read to him.

A related question is whether the State, having established that Calvert heard his *Miranda* rights, sufficiently established that Calvert also understood those rights. We note that Calvert had no difficulty communicating in English with Corporal Thurman either during the arrest or at the hospital. We also note the trial court's unchallenged finding that at the time of his arrest, Calvert did not appear to have been unduly influenced by any substances. We treat this unchallenged finding as a verity on appeal. *Davis v. Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). Given Calvert's fluency in English and lack of noticeable impairment at the time of his arrest, we see no evidentiary basis to overturn the trial court's finding that Calvert understood the rights read to him by Detective Hilton.

For these reasons, we uphold the trial court's determination that Calvert understood his *Miranda* rights and knowingly waived them when he later spoke with Corporal Thurman at the hospital. The trial court properly denied Calvert's motion to suppress.

B.   CALVERT FAILED TO PRESERVE HIS NONCONSTITUTIONAL CHALLENGE TO THE CRIMINAL FILING FEE

Calvert next argues the trial court erred when it imposed the $200 criminal filing fee under RCW 36.18.020(2)(h). He argues the criminal filing fee is a discretionary cost that may not be imposed unless the trial court first inquires into his current and likely future ability to pay.

Calvert did not make this argument to the sentencing court. We generally refuse to consider an argument raised for the first time on appeal unless one of three exceptions applies. RAP 2.5(a). Calvert does not argue that any exception to RAP 2.5(a) applies. We, therefore, refuse to review this claim of error.

C.   IMPOSITION OF THE $200 CRIMINAL FILING FEE WAS NOT A MANIFEST ERROR AFFECTING A CONSTITUTIONAL RIGHT

Calvert further argues that imposition of the $200 criminal filing fee violates state and federal equal protection because a criminal defendant is required to pay a criminal

filing fee if convicted, whereas a civil litigant can apply to have the civil filing fee waived in accordance with GR 34.

Calvert did not make this argument to the sentencing court. Nevertheless, RAP 2.5(a)(3) permits an appellate court to review an unpreserved claim of error if it involves a manifest error affecting a constitutional right. Our RAP 2.5(a)(3) analysis involves a two-prong inquiry. First, the alleged error must truly be of constitutional magnitude. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). Second, the asserted error must be manifest. *Id.*

The first prong is met. Invoking both the state and federal constitutions, Calvert argues there is no rational basis to require all convicted criminal defendants to pay the criminal filing fee but allow some civil litigants to have their filing fee waived under GR 34. Calvert's claim of error therefore is truly of constitutional magnitude.

The second prong is not met. We construe RAP 2.5(a)(3) in a manner that strikes a careful policy balance between requiring objections to be raised so trial courts can correct errors and permitting review of errors that actually resulted in serious injustices to the accused. *Kalebaugh*, 183 Wn.2d at 583. "Manifest" has been described as an error of law "that the trial court should have known." *Id.* at 584. In addition, "manifestness 'requires a showing of actual prejudice.'" *Id.* (internal quotation marks omitted) (quoting

7

*State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). "To demonstrate actual prejudice, there must be a 'plausible showing . . . that the asserted error had practical and identifiable consequences'" in the case. *Id.* (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). By limiting our review of unpreserved constitutional errors to truly constitutional errors that are obvious and resulted in actual prejudice, we strike the proper balance.

Here, it is not obvious that the trial court violated Calvert's state and federal equal protection rights when it imposed the $200 criminal filing fee. Calvert's argument has not been addressed in a published decision by our appellate courts. For this reason, we refuse to review this claim of error.

D.     APPELLATE COST AWARD

Calvert requests that we deny the State an award of appellate costs in the event the State substantially prevails. We deem the State the substantially prevailing party. If the State seeks appellate costs, we defer the issue of appellate costs to our commissioner in accordance with RAP 14.2.

No. 34924-1-III
*State v. Calvert*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Siddoway, J.                                      Pennell, J.

9