[No. 20190-9-II. Division Two. January 16, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. MELVIN K.
COPELAND, *Appellant*.

*Mark W. Muenster*, for appellant (appointed counsel for appeal).

*James J. Stonier, Prosecuting Attorney*, and *Susan I. Baur, Deputy*, for respondent.

BRIDGEWATER, J. — Melvin Copeland appeals his conviction for second degree rape, and the State cross-appeals the trial court's failure to sentence Copeland as a persistent offender. We hold that the trial court abused its discretion when it denied Copeland a new trial because the State failed to disclose a felony conviction of the complaining witness. We reverse and remand for new trial.

In April 1995, Copeland fled to Virginia under an assumed name when he learned that the Longview police were investigating him for the second degree rape of A.M. An information was filed, an arrest warrant issued, and Longview detectives flew to Virginia to transport Copeland back to Washington. When the detectives interviewed Copeland in Virginia without counsel present, Copeland

explained his side of the story. He first denied having sexual intercourse with A.M. and then admitted it. Upon returning to Washington, Copeland changed his story again, stating that A.M. had agreed to exchange sex for drugs before leaving a bar. The parties dispute whether Copeland waived his right to counsel while in Virginia.

The trial court denied Copeland's pretrial motion to suppress a 911 tape that the State had not included in its list of exhibits. The State informed him during pretrial motions that it intended to use his two prior convictions in Florida to impeach him should he take the stand and that, despite the serious nature of these convictions, the State was not seeking a "three strikes" persistent offender sentence, i.e., a life sentence without the possibility of parole. Copeland responded that he was relying "absolutely" on the State's decision not to seek a persistent offender sentence. The trial court questioned whether it had the discretion to impose anything other than a persistent offender sentence.

The jury convicted Copeland of second degree rape in Cowlitz County Superior Court on September 25, 1995. On November 7, the defense moved for a new trial after it discovered that A.M. had been convicted of theft in Cowlitz County Superior Court in 1993. The trial court denied Copeland's motion for new trial. On November 14, the scheduled day of sentencing, the State notified Copeland that it was seeking a persistent offender sentence because it no longer believed that it had any discretion in the matter. The trial court determined that the State's notice was untimely and sentenced Copeland to 130 months' incarceration. He appeals, contending that he was denied a fair trial because the State failed to disclose A.M.'s conviction. The State cross-appeals Copeland's sentence.

At oral argument before this court, the State argued that it did not know whether A.M.'s conviction was within the knowledge, possession or control of members of the prosecuting attorney's staff, as required by CrR 4.7 to trigger the prosecutor's duty to disclose. Under RAP 9.11, we

subsequently ordered an evidentiary hearing in Cowlitz County Superior Court to resolve this question. The findings from this hearing indicate that A.M.'s record of conviction was accessible and in the possession and control of the State at the time of Copeland's trial.

I

A trial court's decision granting or denying a motion for a new trial is reviewed under an abuse of discretion standard and will not be disturbed on appeal unless there is a clear abuse of such discretion. *State v. Bartholomew*, 98 Wn.2d 173, 211, 654 P.2d 1170 (1982). CrR 7.6(a) lists the grounds for a new trial: "The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected: . . . (2) Misconduct of the prosecution . . . ." A new trial may be granted if a defendant's substantial right has been materially affected by prosecutorial misconduct. *State v. Perez*, 77 Wn. App. 372, 375, 891 P.2d 42, *review denied*, 127 Wn.2d 1014 (1995). "[P]rosecutorial misconduct requires a new trial only if the misconduct was prejudicial." *State v. Stith*, 71 Wn. App. 14, 19, 856 P.2d 415 (1993) (citing *State v. Graham*, 59 Wn. App. 418, 426, 798 P.2d 314 (1990)). "Misconduct is prejudicial when, in context, there is 'a substantial likelihood' that the misconduct 'affected the jury's verdict.' " *Stith*, 71 Wn. App. at 19 (quoting *State v. Barrow*, 60 Wn. App. 869, 876, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991)). "The defendant bears the burden of proof on this issue." *Stith*, 71 Wn. App. at 19 (citing *Barrow*, 60 Wn. App. at 876).

The first question is whether there was prosecutorial misconduct during discovery. CrR 4.7(a)(1) states that the prosecuting attorney shall disclose to the defendant "the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing: . . . (vi) any record or prior criminal convictions known to the prosecuting attorney of the defendant and of persons whom the prosecuting attorney intends

to call as witnesses at the hearing or trial." "The prosecuting attorney's obligation under this section is limited to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff." CrR 4.7(a)(4).

It is the long settled policy in this state to construe the rules of criminal discovery liberally in order to serve the purposes underlying CrR 4.7, which are "to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process . . . ." To accomplish these goals, it is necessary that the prosecutor resolve doubts regarding disclosure in favor of sharing the evidence with the defense.

*State v. Dunivin*, 65 Wn. App. 728, 733, 829 P.2d 799 (citation omitted), *review denied*, 120 Wn.2d 1016 (1992).

■ Copeland contends that the trial court abused its discretion when it denied his motion for a new trial. He discovered after trial that the prosecution failed to disclose that the complaining witness, A.M., had a prior felony conviction for theft. CrR 4.7(a)(1)(vi) and CrR 4.7(a)(4) require the prosecuting attorney to disclose to the defense any record or prior criminal convictions within the knowledge, possession or control of the prosecuting attorney or members of his or her staff of any person whom the prosecuting attorney intends to call as a witness. The record of A.M.'s Cowlitz County criminal conviction for theft, which occurred only two years before Copeland's trial, was within the possession and control of the Cowlitz County Prosecuting Attorney's Office.

A deputy prosecutor, who is a member of the prosecuting attorney's staff, engages in misconduct when he or she fails to disclose prior criminal convictions of witnesses intended to be called for trial if that information is within the knowledge, control or possession of the deputy prosecutor or of other members of the prosecuting attorney's staff, regardless of whether the deputy prosecutor has actual knowledge of the information. This differs from *State v. Freder-*

*ick*, 32 Wn. App. 624, 648 P.2d 925 (1982), *rev'd on other grounds*, 100 Wn.2d 550, 674 P.2d 136 (1983), where the court declined to charge a prosecuting attorney with constructive knowledge of convictions on file in the county courthouse.[1] Unlike *Frederick*, all members of the prosecuting attorney's staff had access to the physical file stored at the prosecutor's office concerning A.M.'s prosecution and conviction for theft. This file included charging documents, a plea agreement, the prosecutor's copies of all documents filed with the court, and the prosecutor's notes of all action taken in the case. The trial court found that "[t]he prosecutor's office also maintains a database for all [of] its cases, which is accessible by all members of the office staff, and all deputy prosecuting attorneys." The deputy prosecutor's action of failing to disclose A.M.'s theft conviction constituted misconduct, regardless of the fact that such failure may have been inadvertent.

■ The second question is prejudice, for prosecutorial misconduct requires a new trial only if there is a substantial likelihood that the misconduct affected the jury's verdict. The State's case essentially relied upon the credibility of the complaining witness, A.M. The theft conviction is admissible as relevant to the complaining witness' credibility. ER 609(a)(2). We cannot say that this evidence would not have created a reasonable doubt that did not otherwise exist. There is a substantial likelihood that the misconduct affected the jury's verdict. The trial court abused its discre-

---

[1]*Frederick* held,

The prosecutor is not charged with "constructive notice" of all of his county's records. Rather, the prosecutor's duties, as set forth in CrR 4.7, require disclosure of "information within the knowledge, possession or control of members of his staff." CrR 4.7(a)(4). To require a prosecutor to search court files without some reason to believe that particular records will be found therein would impose an unreasonable burden upon the State. No contention is made that the prosecutor's reliance upon a search conducted by state and federal authorities was improper or that the search was unreasonably delayed.

32 Wn. App. at 627.

tion when it denied Copeland's motion for a new trial. We reverse and remand for a new trial.

## II

Although we remand this case for a new trial, we choose to address one other issue raised by the defendant. Copeland contends that he unequivocally invoked his Sixth Amendment and CrR 3.1(b) right to counsel. The detective advised Copeland of his *Miranda*[2] rights both orally and in writing. Copeland responded that he would need a court-appointed attorney because he could not afford one. The detective then advised him that when he returned to Washington, he would be afforded a court-appointed attorney. The detective asked Copeland if he was requesting to have an attorney at that time, or if he was willing to speak without an attorney. Copeland responded he was willing to speak at that time and that he did not have a problem with it.

 Copeland contends that the Longview detectives improperly interrogated him after he invoked his right to counsel. The State contends that Copeland's request for counsel was equivocal and that the officers were free to continue to question him. The Sixth Amendment right to counsel attaches at the initiation of adversarial criminal proceedings. *Davis v. United States*, 512 U.S. 452, 456-57, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994); *United States v. Gouveia*, 467 U.S. 180, 188, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984) (citing *Kirby v. Illinois*, 406 U.S. 682, 688-89, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972) (adversarial criminal proceedings include formal charge and filing of information)). The CrR 3.1(b) right to counsel accrues as soon as feasible after the defendant is taken into custody, appears before a committing magistrate, or is formally charged, whichever occurs earliest. "Police are not prohibited under the Sixth Amendment from initiating conversations with

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

the accused in the absence of counsel if defendant has not previously invoked the right, is given warnings, and makes a valid waiver." *State v. Quillin*, 49 Wn. App. 155, 159, 741 P.2d 589 (1987) (citing *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 1407, 89 L. Ed. 2d 631 (1986); *State v. Vidal*, 82 Wn.2d 74, 78, 508 P.2d 158 (1973)), *review denied*, 109 Wn.2d 1027 (1988). "If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis*, 512 U.S. at 458 (citations omitted).

"Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Davis*, 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991)). The suspect must unambiguously request counsel. *Davis*, 512 U.S. at 459. A suspect invoking his right to counsel "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. The rule is prophylactic, not constitutional, and arises out of our system's belief that a suspect's wish for counsel during a custodial interrogation should be respected. *Davis*, 512 U.S. at 459. "An equivocal request for an attorney is one that expresses both a desire for counsel and a desire to continue the interview without counsel. Any questioning after the equivocal assertion of the right to counsel must be strictly limited to clarifying the suspect's wishes." *Quillin*, 49 Wn. App. at 159 (citations omitted). Officers are not required to cease questioning in the face of an equivocal or ambiguous request for counsel; to require them to cease questioning "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity" because the police

would be prevented from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present. *Davis*, 512 U.S. at 460 (quoting *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975)). In *Davis*, the court upheld the lower courts' determinations that the suspect's remark, "maybe I should talk to a lawyer," was not an unambiguous request for counsel. 512 U.S. at 462.

██ ██ The right to counsel includes the right to have counsel present during a police interrogation. Copeland failed to unambiguously invoke that right. His request that he "needed" a "court-appointed" attorney could have been reasonably understood to be a statement about his perceived indigency. Moreover, under CrR 3.1, when Copeland was offered access to an attorney in Virginia, he did not say that he wanted an attorney, thereby waiving his right to counsel. The ambiguity regarding the indigency and the circumstances of extradition justified further questioning to clarify Copeland's statement.

This case is analogous to *State v. Lewis*, 32 Wn. App. 13, 645 P.2d 722 (1982). In *Lewis*, when asked whether he was willing to waive his right to counsel, the suspect responded, "We'll cross that bridge when we come to it," and, "No, I'm not going to waive any rights, a a a (sic) I'll just wait until I know what's happening." 32 Wn. App. at 16 n.1 (emphasis omitted). When the investigators attempted to clarify whether Lewis was invoking his right to counsel, Lewis responded, "I believe gentlemen that if this is going to get into something deep where you're attempting to get me to incriminate myself then I should have an attorney present." *Lewis*, 32 Wn. App. at 16, 20. The court determined that Lewis did not invoke his right to counsel:

> [The statements] did not indicate whether Lewis wanted an attorney present at that time or was only reserving his right to terminate the interview and request counsel when he felt the questioning dictated it. Faced with this equivocation, Franz [the investigator] stopped questioning Lewis about Kitsap Investment Associates and sought to clarify whether Lewis

wanted to terminate the interview until counsel was present. Franz' line of questioning was limited to clarifying the request and not tricking Lewis into an unwitting waiver.

*Lewis*, 32 Wn. App. at 20.

Copeland cites to *State v. Chapman*, 84 Wn.2d 373, 526 P.2d 64 (1974), and *State v. Grieb*, 52 Wn. App. 573, 761 P.2d 970 (1988) for the proposition that his invocation was unequivocal. The suspect in *Grieb* made several statements concerning his right to counsel, including, "I don't wanna waive my rights." 52 Wn. App. at 574. This statement was held to be an unequivocal invocation of the right to counsel. *Grieb*, 52 Wn. App. at 576. In *Chapman*, the suspect's statement that she wanted representation "now" was unequivocal. 84 Wn.2d at 377. Neither case is analogous to the current case.

Copeland argues that the officer "affirmatively misled Copeland into thinking that he could not have a lawyer appointed for him until he returned to Washington." The record does not support this argument. Instead, the record indicates that the officer told Copeland that he could have a court-appointed attorney in Washington before asking Copeland if he wanted an attorney now. Copeland responded that he would speak to the officer now. The officer did not affirmatively mislead Copeland and Copeland's statements were admissible. Because there was no unlawful interrogation in Virginia, and because Copeland waived his right his right to counsel again in Washington, Copeland's statements upon returning to Washington were not the fruits of an unlawful interrogation and were properly admitted.

Because we are reversing the conviction and remanding the case for a new trial, we need not address the discovery and evidentiary issues Copeland raises. Also, since the conviction is reversed and the matter remanded for new trial, the sentencing issue is moot. Should Copeland be reconvicted, recent case law has clarified sentencing of persistent offenders. *See State v. Thorne*, 129 Wn.2d 736, 768 n.7, 921 P.2d 514 (1996); *State v. Manussier*, 129 Wn.2d

652, 669, 921 P.2d 473 (1996), *cert. denied*, 117 S. Ct. 1563 (1997).

Reversed and remanded for new trial.

HOUGHTON, C.J., and MORGAN, J., concur.

Reconsideration denied February 10, 1998.