

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36763-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVIEL DAVIS CANELA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Daviel Canela appeals his convictions for attempted first degree murder and second degree unlawful possession of a firearm. Omission of an essential element from the charging document requires reversal of the attempted murder conviction without prejudice to refiling. We affirm the firearm conviction. We remand for resentencing, at which Mr. Canela can raise his objections to terms of his judgment and sentence and to his offender score calculation.

FACTS AND PROCEDURAL BACKGROUND

On an afternoon in March 2018, Pasco police officers responded to calls reporting that someone had been shot outside an apartment complex. The victim, Victor Garcia, had been shot twice, but survived.

There were four eyewitnesses to the shooting. One was Zeima Cadenas Quintero, Mr. Garcia's girlfriend. She testified at Mr. Canela's trial that she and Mr. Garcia were

outside his sister's apartment building, moving items from Mr. Garcia's brother-in-law's van to Ms. Cadenas's car, when they saw Mr. Canela, who they knew. Mr. Garcia walked over to speak with Mr. Canela. Nothing about the men's actions led Ms. Cadenas to believe they were arguing, but there came a point when she heard Mr. Canela say something to Mr. Garcia about being "Xed out," after which she heard the popping of gunshots. Report of Proceedings (RP) at 292. She turned to look and saw that Mr. Canela had his arm extended and was shooting at Mr. Garcia. Mr. Garcia appeared to have been walking away from Mr. Canela. Ms. Cadenas testified that Mr. Garcia had been "Xed out" from a gang to which Mr. Canela still belonged, "meaning that [Mr. Garcia] is like no longer from it, because they're saying that he snitched on somebody or something." RP at 301. When the shooting stopped, Ms. Cadenas ran toward Mr. Garcia and claims to have seen Mr. Canela smirk and run off.

Two of the eyewitnesses to the shooting were 16-year-old high school friends, U.G. and C.S.,[1] who were on their way from a grocery store to one of the teen's homes. U.G. testified in the trial below that the shooter was wearing a gray hoodie and blue jeans. He testified that after shooting his victim, the shooter ran away down an alley.

---

[1] Initials are used to protect the juvenile witnesses' identities, consistent with a general order of this court. *See* General Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), available at https//www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders & div=III.

Because U.G. saw a black vehicle drive away at that point, he believed the shooter might have left in the vehicle. He did not see the shooter get into the car.

C.S. also testified that the shooter was wearing a gray hoodie and dark blue pants. He, too, testified that the shooter ran away through an alley, although he never saw the shooter run toward a black car.

The fourth eyewitness was Josef Stueckle. Mr. Stueckle testified he had been visiting a friend at the apartment complex and stepped outside to smoke. He spoke with Mr. Canela and Mr. Garcia and offered them cigarettes. When he finished his cigarette, he went back to his friend's apartment to return a borrowed lighter. He returned to the sidewalk and began walking toward another friend's apartment when he heard shouting. He heard the words, "Weren't you Xed out?" RP at 333. He saw Mr. Canela firing shots in his direction and that Mr. Garcia had already fallen. After Mr. Canela ran off, Mr. Stueckle remained at the scene and spoke to responding officers. They took him to a police location where they presented him with a photomontage of six males and asked him if he believed any of them was the shooter. Mr. Stueckle identified Mr. Canela.

Information from witnesses led the responding officers to look for Mr. Canela at his friend's apartment a few blocks away, where they located him. After obtaining a search warrant for the apartment, police found a .22 caliber revolver in a leather holster that was hidden in the toilet tank. Three other guns were found in a cutout in the wall

that was located behind the bathroom mirror. Police located a gray hooded sweatshirt in a bedroom located next to the bathroom where the guns were found.

Mr. Canela was charged with one count of attempted first degree murder and one count of unlawful possession of a firearm in the second degree. Although the means of attempted first degree murder that the State relied on at trial was premeditated intentional murder, its charging document did not identify premeditation as an element of the charge.

*Trial*

In October 2018, Mr. Canela's trial was continued for a week at the request of the defense. When the State then moved to further continue the trial to late November, Mr. Canela's attorney objected, stating, "I'm really ready to go on the current trial date." RP at 5. The court denied the continuance.

At the outset of trial, defense counsel complained to the trial court that the State's witness list did not provide all the information about its witnesses required by the criminal rules. The two juvenile witnesses were identified only by their initials and date of birth, and Mr. Stueckle was named but no contact information was provided. The prosecutor explained that it was State policy to identify juvenile witnesses by initials and birthdate. He explained that Mr. Stueckle was a "street person" who had no permanent address and was presently in jail in Kennewick. RP at 95. The prosecutor claimed this was the first he had heard that defense counsel was having difficulty contacting the witnesses.

4

Asked by the trial court if these three witnesses would be called, the prosecutor said that they would be, and he expected them to appear.

Although the trial court expressed frustration at the failure of the defense to raise the issue earlier, it ultimately found a discovery violation by the State and strove to identify the least-onerous remedy that would allow the defense to be prepared to examine the witnesses. Having been informed by the State that the two juveniles were presently at the court, were available to be interviewed, and had no prior convictions, it accepted a defense proposal that it recess for the remainder of the day, giving the defense an opportunity to interview those witnesses. The State informed the court that Mr. Stueckle did have a criminal history, which it would provide to defense counsel.

The next morning, the State informed the court it was in the process of running the criminal histories for its remaining civilian witnesses. Defense counsel said he was under the impression he would receive the criminal histories the day before. The prosecutor explained that his staff's workday ends at 4:00 p.m., and no one able to run the histories was around by the time court concluded the prior day. The trial court directed the prosecutor to provide the information and give defense counsel a chance to look at it. The court said to defense counsel, "[I]f you don't have enough time to prepare, you can address that with the Court." RP at 107.

After the noon recess, defense counsel informed the court that he had been "literally dragged in back from lunch" to be offered an unexpected three-minute

5

interview with Mr. Stueckle, and only after that was he given Mr. Stueckle's criminal history. RP at 197. He argued that "[a]t this point the only option" was to exclude as witnesses Mr. Stueckle and two other civilian witnesses whose criminal histories he had not yet received. *Id.* Recriminations ensued. The prosecutor informed the trial court that he could fill the following trial day (a Friday) with officer testimony, meaning that the lay witnesses would not be called until the following Monday.

After hearing from counsel, the trial court said it knew that excluding witnesses was an option, but it was instead going to recess for the day so that defense counsel could interview Mr. Stueckle. It told the lawyers it would have the jurors return at 9:30 a.m. the next morning and expected to see the lawyers at 8:30 a.m.

Asked the next morning by the trial court if the lawyers were ready to proceed, the following exchange occurred:

> [DEFENSE COUNSEL]: . . . I had the opportunity to speak with [Mr. Stueckle]. I was advised by the state that the other two witnesses will be available all day today since they're not going to be called until Monday. I can maybe do it during the lunch hour. I can find enough time between now and then.
>
> THE COURT: I appreciate that. Do we have the, criminal histories for all those witnesses as well?
>
> [PROSECUTOR]: Yes, your Honor.
>
> THE COURT: Excellent. Thank you. I did just see an order for transporting Mr. Stueckle. Is he here?
>
> [PROSECUTOR]: He's in Kennewick, your Honor, and I expect to call him this afternoon. So we'll get him transported, and he'll be in civilian clothes and be ready to go.

THE COURT:  . . . [Addressing defense counsel], you have spoken with him?

[DEFENSE COUNSEL]:  Yes, sir.

THE COURT:  So we are going to be ready at 9:30 when the jurors are here to take up with testimony?

[PROSECUTOR]:  Yes, your Honor.

THE COURT:  Any issues that we can address between now and then?

[DEFENSE COUNSEL]:  None that I can think of.

RP at 207-08.  Trial proceeded with no further defense objections about witness disclosures.

The State called as trial witnesses four officers, an evidence technician, a medically trained firefighter, U.G., C.S., Ms. Cadenas, and Mr. Stueckle.  Their testimony was consistent with the foregoing statement of the facts.  Mr. Canela did not call any witnesses.

Toward the end of the State's case, the prosecutor informed the trial court outside the presence of the jury that Mr. Canela had stipulated to the prior felony that the State was required to prove as an element of the firearm possession charge.  He stated:

> I have a stipulation, along with a certified copy of the judgment and sentence that the stipulation's based on.
>     One of the interesting things about the stipulation, your Honor, is that the certified copy does not go to a jury, but a copy of the stipulation would.

RP at 364.  The trial court asked defense counsel if he was in agreement and defense counsel affirmed that he was.  Both counsel had signed the stipulation and

7

the trial court announced for the record that it was signing the stipulation "and it will be provided to the jury." RP at 365.

Defense counsel argued in closing that holes in the State's case were "plentiful," and after his own investigation the State's case was "almost like looking at Swiss cheese." RP at 407. Among reasons for reasonable doubt he argued to the jury were inconsistencies in the witness's testimony about the shooter's clothing, discrepancies between the gun described by witnesses and the gun offered by the State as the one used in the crime, and challenges to the reliability of the four eyewitnesses.

In rebuttal, the prosecutor defended the reliability of Mr. Stueckle's identification, saying:

> Mr. Stueckle knew the defendant from serving time with him at the jail. There was no mistake on his part. He actually looked at a photo lineup, picked the defendant out of the photo lineup. The officers knew who shot Garcia from almost the point of arriving at the scene, because they were told by two eye witnesses.

RP at 427. The affidavit of probable cause filed at the commencement of Mr. Canela's prosecution stated that Mr. Stueckle knew Mr. Canela from serving time with him at the jail. But no evidence on that score had been presented during the trial. The defense did not object.

Immediately following closing arguments and the discharge of the jury for deliberations, the prosecutor brought up the need to provide a copy of Mr. Canela's stipulation to a prior felony to the jury for its deliberations. The court clerk admitted she

8

might not have understood how the trial court expected the stipulation and judgment and sentence to be handled. The clerk had marked the judgment and sentence as an exhibit that had not been provided to the jury; the stipulation had not been marked as an exhibit and also had not been provided to the jury.

After both parties reaffirmed that the stipulation should be provided to the jury, the trial court said, "We'll mark it at this time and have it admitted. . . . So the stipulation will be marked and admitted as exhibit number 50." RP at 430-31.

The jury found Mr. Canela guilty as charged.

*Motion for New Trial*

A little over a week after the jury's verdict, Mr. Canela moved for a new trial after defense counsel obtained his own criminal history for Mr. Stueckle and discovered two convictions that had not been disclosed by the State. The convictions disclosed by the State had included one recent shoplifting (third degree theft) conviction, but the history obtained by defense counsel showed three recent convictions for third degree theft. Mr. Canela argued that this nondisclosure exacerbated the failures to disclose that he complained about at the outset of trial.

The State responded that any possible prejudice from the initial failures to disclose had been avoided by the continuances, disclosures, and interview opportunities ordered by the trial court. It argued that the two undisclosed misdemeanor convictions were de

minimis in light of the disclosed felonies, and that the evidence against Mr. Canela was overwhelming.

The trial court entertained oral argument of the new trial motion, at the conclusion of which it found that the State had committed misconduct by failing to disclose some witness contact and criminal history information prior to trial, and that the criminal history for Mr. Stueckle provided by the State was incomplete. It nonetheless concluded that Mr. Canela failed to show that the disclosure violations materially affected his right to a fair trial.

In thereafter sentencing Mr. Canela, the trial court imposed a $500 victim's assessment that the judgment and sentence provided would be interest-bearing, and the judgment and sentence included preprinted language requiring Mr. Canela to pay supervision fees as determined by the Department of Corrections. The court had said during the sentencing hearing that other than the crime victim's assessment and restitution, it would not impose any further fines, fees, or costs.

Mr. Canela filed a notice of appeal and obtained an order of indigency on the day he was sentenced. In addition to the customary briefing, we granted two motions by Mr. Canela to brief additional issues supplementally.

## ANALYSIS

Between his opening brief and the two supplemental briefs authorized by this court, Mr. Canela makes a dozen assignments of error. We first address and agree with

10

Mr. Canela's contention that the State's amended information omitted an essential element of attempted first degree murder, which requires us to reverse that conviction without prejudice and remand for further proceedings. Because resentencing will be required, we do not address Mr. Canela's challenges to community custody conditions, to costs imposed, and to an offender score rendered inaccurate by our Supreme Court's recent decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). Many of these challenges are conceded by the State. All can be raised at resentencing.

Of the assignments of error that remain, a second category relates to the trial court's refusal to grant relief for the State's discovery violations: it failed to exclude Mr. Stueckle as a witness and denied Mr. Canela's motion for a new trial.

A third category of error alleged is that the prosecutor's reference to facts outside the record during closing argument deprived Mr. Canela of his right to a fair trial.

A fourth category challenges Mr. Canela's firearm possession conviction for failure to give a unanimity instruction and because there was insufficient evidence of a predicate conviction.[2]

We address the assigned errors in the order stated.

---

[2] Mr. Canela also argues cumulative error, but we find no error affecting the conviction that we affirm.

I.   FOR REASONS EXPLAINED IN *STATE v. MURRY*, ATTEMPTED MURDER WAS INADEQUATELY CHARGED

"[A] charging document is constitutionally adequate only if all essential elements of a crime, statutory and nonstatutory, are included in the document so as to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense." *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995) (*Vangerpen* II). Following *Vangerpen* II, premeditation is an element of first degree attempted murder for *charging purposes*, if not for conviction purposes. *State v. Murry*, 13 Wn. App. 2d 542, 552, 465 P.3d 330 (citing *Vangerpen* II, 125 Wn.2d at 791), *review denied*, 196 Wn.2d 1018, 474 P.3d 1050 (2020).

The first decision in Vangerpen's appeal of his attempted first degree murder conviction was the decision of this court. *State v. Vangerpen*, 71 Wn. App. 94, 856 P.2d 1106 (1993) (*Vangerpen* I) *aff'd*, 125 Wn.2d 782. The State intended to charge Vangerpen with attempted first degree (premediated) murder. Instead, the information stated in relevant part that the defendant

> in King County, Washington on or about July 20, 1991, with intent to cause the death of another person did attempt to cause the death of Officer D.C. Nielsen, a human being;
> Contrary to RCW 9A.32.030(1)(a) and 9A.28.020.

*Id.* at 97 n.1. At trial, and after the State rested its case, defense counsel moved to dismiss the charge, arguing that the information "failed to set out an essential element of attempted first degree murder, specifically premeditation." *Id.* at 97.

12

The trial court denied the motion and allowed the State to amend its information to include the element.

On appeal, this court held that allowing amendment after the State rested its case was prejudicial per se under *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). *Vangerpen* I, 71 Wn. App. at 102. This court next considered whether the charging document had been sufficient without the challenged amendment, and held that it had not been. *Id.* This court reasoned first that "the initial document charging appellant failed to include the necessary element of premeditation." *Id.* at 103. It also observed that "as drafted, the information failed to charge attempted first degree murder. Instead it charged attempted second degree murder. It is fundamental that an accused cannot be tried for a crime which has not been charged." *Id.*

Review was granted by our Supreme Court, which affirmed, explaining:

> In the present case, the information alleged only intent to cause death, not premeditation. Therefore, the State failed to charge one of the statutory elements of first degree murder and instead included only the mental element required for second degree murder.

*Vangerpen* II, 125 Wn.2d at 791.

In *Murry*, this court acknowledged that premeditation is actually not an element of attempted first degree murder. But it followed the Supreme Court's binding decision in *Vangerpen* II, reasoning that the Supreme Court held that premeditation was an element for charging purposes. *Murray*, 13 Wn. App. 2d at 552. In addition to observing that we

13

are bound by the high court's decision, this court observed that the statutory manner or means of committing a crime is an element that the State must include in the information, *id.* at 551 (citing *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988)), and of the three means of committing first degree murder, only premeditated murder can be the basis for an attempted first degree murder charge. *Id.* at 553. Unless premeditated murder is identified as the basis for the charge, "a charging document that merely states that a defendant took a substantial step toward committing first degree murder would fail to state a crime." *Id.*

The State attempts to distinguish *Murry* by arguing that in Mr. Canela's case, the amended information, liberally construed, includes the element of premeditation in some form. Since the sufficiency of the amended information is being challenged for the first time on appeal, "we construe the document liberally and will find it sufficient if the necessary elements appear in any form, or by fair construction may be found, on the documents face." *State v. Satterthwaite*, 186 Wn. App. 359, 362, 344 P.3d 738 (2015).

The State argues that the amended information in this case is sufficient because it specifies the act of shooting the victim with a handgun as the substantial step toward the crime of first degree murder.[3] It argues that the language implies a premeditated intent to

---

[3] The amended information included the following language in count I:

14

kill. The act of shooting the victim with a handgun could be used to support any of the three ways of committing murder in the first degree, however. *See* RCW 9A.32.030(1)(a)-(c).

The necessary elements cannot be found on the charging document's face. The remedy for this error is dismissal of the attempted first degree murder charge without prejudice. *Vangerpen* II, 125 Wn.2d at 792-93.

II.     THE DISCOVERY VIOLATIONS ALLEGED BY MR. CANELA DID NOT DEPRIVE HIM OF A FAIR TRIAL

The evidence that Mr. Canela was the shooter was inextricably related to the State's proof that he unlawfully possessed a firearm, so the remaining assignments of error bear on his conviction on the second count. The second category of error he alleges is that the discovery violations should have resulted in the exclusion of Mr. Stueckle as a witness at trial and later, an order granting his motion for a new trial.

---

**ATTEMPTED MURDER IN THE FIRST DEGREE, [RCW 9A.28.020(1) AND 9A.32.030(1)(a)], A CLASS A FELONY,** maximum penalty of LIFE and $50,000, committed as follows:

That the said Daviel Davis Canela in the County of Franklin, State of Washington, on or about March 29, 2018, then and there, with intent to commit the crime of Murder in the First Degree, committed an act, to wit: did shoot the victim with a handgun, which was a substantial step toward that crime.

Clerk's Papers at 9.

*Witness exclusion*

CrR 4.7 addresses the parties' obligations to provide discovery in criminal cases. The prosecutor is required to disclose to the defendant, no later than the omnibus hearing, the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at trial. CrR 4.7(a)(1)(i). The prosecutor is further required to disclose "any record of prior criminal convictions known to the prosecuting attorney . . . of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial." CrR 4.7(a)(1)(vi). The obligations are continuing, requiring supplementation. CrR 4.7(h)(2).

"The purpose behind discovery disclosure is to protect against surprise that might prejudice the defense." *State v. Barry*, 184 Wn. App. 790, 796, 339 P.3d 200 (2014). "If the State fails to disclose such evidence or comply with a discovery order, a defendant's constitutional right to a fair trial may be violated; as a remedy, a trial court can grant a continuance, dismiss the action, or enter another appropriate order." *Id.*; *see also* CrR 4.7(h)(7)(i). Discovery violation sanctions are reviewed for an abuse of discretion. *State v. Bradfield*, 29 Wn. App. 679, 682, 630 P.2d 494 (1981). "Discretion is abused when a trial court's decision is exercised on untenable grounds or for untenable reasons or is manifestly unreasonable." *Barry*, 184 Wn. App. at 797.

"Exclusion or suppression of evidence is an extraordinary remedy and should be applied narrowly." *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998), *abrogated on other grounds by State v. Jackson*, 195 Wn.2d 841, 467 P.3d 97 (2020)).

16

"The appropriate remedy for late disclosure is typically to continue the trial to give the other party time to interview the new witness and prepare to address his or her testimony." *State v. Kipp*, 171 Wn. App. 14, 31, 286 P.3d 68 (2012), *rev'd on other grounds by* 179 Wn.2d 718, 317 P.3d 1029 (2014).

When deciding whether exclusion is an appropriate sanction, courts should consider "(1) the effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which [the other party] will be surprised or prejudiced by the witness's testimony; and (4) whether the violation was willful or in bad faith." *Hutchinson*, 135 Wn.2d at 882-83 (citing *Taylor v. Illinois*, 484 U.S. 400, 415 n.19, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)).

Mr. Canela fails to demonstrate that by refusing to exclude witnesses, the trial court abused its discretion. His trial lawyer's actions belie prejudice. A week before trial, Mr. Canela's lawyer objected to the State's request for a continuance, saying, "I'm really ready to go on the current trial date." RP at 5. No mention was made of problems contacting witnesses as a result of inadequate disclosure. He first raised the issue of missing witness list information the day the jury was to be sworn in. Trial was recessed for the afternoon so that he could interview U.G. and C.S., who had no criminal histories. Defense counsel never informed the trial court that any further accommodation was needed with respect to U.G. or C.S.

17

Mr. Stueckle's criminal history was provided following a noon recess, and trial was again recessed for the afternoon so that defense counsel could interview him. Asked the next morning (a Friday) if the parties were ready to proceed, Mr. Canela's lawyer answered that he had spoken to Mr. Stueckle and would be able to find time to interview two remaining civilian witnesses the State planned to call on Monday. Asked if there were "[a]ny issues that we can address between now and [when the jury arrives]," defense counsel answered, "None that I can think of." RP at 208.

In arguing this issue on appeal, Mr. Canela provides a thorough description of the applicable law. He cites authority that disclosure that comes as late as it did here, concerning key witnesses such as eyewitnesses, *can* result in surprise, prejudice, and constitute evidence of bad faith. But he fails to demonstrate that any of the late disclosures in this case actually did result in surprise or prejudice or demonstrate bad faith. No abuse of discretion resulting in a violation of his right to a fair trial is shown.

*Denial of new trial motion*

After discovering postverdict that Mr. Stueckle had two undisclosed third degree theft convictions, Mr. Canela moved for a new trial under CrR 7.5(a)(5) and (a)(8). For the first time on appeal, he argues that the nondisclosures constituted a *Brady*[4] violation. A violation of *Brady* presents an issue of constitutional dimension, and because the

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

18

constitutional challenge turns on the same facts Mr. Canela argued as a basis for his new

trial motion, the alleged error is manifest and eligible for review.  RAP 2.5(a)(3).

*No* Brady *violation is shown*

"In *Brady*, the United States Supreme Court articulated the government's

disclosure obligations in a criminal prosecution: 'the suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution.'"  *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011) (quoting

*Brady*, 373 U.S. at 87).  *Brady* and its progeny require the State to disclose material

exculpatory and impeachment evidence favorable to a criminal defendant.  *Id.*  "The

government must disclose not only the evidence possessed by prosecutors but evidence

possessed by law enforcement as well."  *Id.*

To establish a *Brady* violation, a defendant must demonstrate the existence of each

of three elements: "'[(1)] the evidence at issue must be favorable to the accused, either

because it is exculpatory, or impeaching; [(2)] that evidence must have been suppressed

by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued.'"  *Id.*

at 895 (alterations in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.

Ct. 1936, 144 L. Ed. 2d 286 (1999)).  With respect to the third element, prejudice, the

terms "material" and "prejudicial" are used interchangeably.  *Id.* at 897.  "[E]vidence is

material only if there is a reasonable probability that, had the evidence been disclosed to

the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (Blackmun, J., plurality portion).

The State does not dispute that the undisclosed convictions were favorable evidence, because impeaching.  It does argue on appeal that Mr. Canela fails to show that the two undisclosed convictions were in the prosecutor's database on the day that the prosecutor's office ran and provided Mr. Canela's history.  But the State never made that argument in the trial court, despite having ample time to determine whether the undisclosed convictions were too recent to be available.  Five months passed between the filing of Mr. Canela's new trial motion and the filing of the State's response.  The State's only argument in the trial court was that the two additional convictions were immaterial and their nondisclosure was not prejudicial.

Mr. Canela's failure to demonstrate the element of prejudice is dispositive.  The trial court found that Mr. Canela had not demonstrated prejudice, noting that Mr. Stueckle was not the only witness to the shooting and Mr. Canela was able to impeach Mr. Stueckle with other criminal history.

Mr. Stueckle was impeached with evidence that he had engaged in quite a bit of criminal conduct during his young life.  The State began Mr. Stueckle's direct examination by establishing his age (24) and having him acknowledge his prior

20

convictions: a 2017 conviction in Cowlitz County for second degree theft, a Franklin

County conviction for second degree burglary, and one other conviction out of Benton

County, that year, for shoplifting. Defense counsel covered the same ground at the

beginning of his cross-examination, coupled with questioning about whether the evidence

Mr. Stueckle would provide was truthful:

> Q. . . . Now you had indicated that you had [a] recent conviction for shoplifting in Benton County? Is that right?
>
> A. Yes.
>
> Q. You also indicated that you have felony theft and felony burglary charges?
>
> A. Correct.
>
> Q. So the, one of the issues and one of the things that's raised here and before you were able to testify is the importance of telling the truth. So are you able to convince me that you are telling us the truth here?
>
> [PROSECUTOR]: Your Honor, I'm going to object to the form of the question. It's improper.
>
> THE COURT: I'll sustain the objection.
>
> Q. The information you're about to give us today, is that information to the best of your knowledge the truth?
>
> A. Before the Judge I swore. I was placed in custody for theft, not for dishonesty. Thank you.

RP at 338-39.

In general, impeachment evidence may be considered material where the witness

in question supplied the only evidence linking the defendant to the crime or to an

essential element of the offense. *United States v. Avellino*, 136 F.3d 249, 256-57 (2d Cir.

1998). "This is especially true where the undisclosed matter would have provided the

only significant basis for impeachment." *Id.* at 257. But "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Id.*

For example, in *Avellino*, the government failed to produce evidence that its chief informant had perjured himself as a government witness at other trials. *Id.* at 258. However, the appeals court determined the evidence was not material under *Brady* in light of the fact that the informant could be impeached with terms of his favorable plea agreement and other acknowledged illegal activities. *Id.*

Here, Mr. Stueckle was not the only eyewitness to the shooting, nor was he the only eyewitness who could identify Mr. Canela. And he was impeached with other convictions for more serious crimes. Because the evidence he provided was cumulative and the undisclosed impeachment material was cumulative, prejudice is not shown.

> *The failure to demonstrate prejudice is fatal to Mr. Canela's rule-based argument as well*

Mr. Canela argues that "[e]ven setting *Brady* aside," he was entitled to a new trial because he demonstrated a substantial likelihood that the prosecutor's conduct affected the jury's verdict. Br. of Appellant at 29. He likens the circumstances of his case to that in *State v. Copeland*, 89 Wn. App. 492, 949 P.2d 458 (1998).

"[P]rosecutorial misconduct requires a new trial only if the misconduct was prejudicial." *State v. Stith*, 71 Wn. App. 14, 19, 856 P.2d 415 (1993). "Misconduct is prejudicial when, in context, there is 'a substantial likelihood' that the misconduct 'affected the jury's verdict.'" *Id.* (quoting *State v. Barrow*, 60 Wn. App. 869, 876, 809 P.2d 209 (1991)). The defendant bears the burden of proving (1) there was prosecutorial misconduct, and (2) prejudice. *Id.* The determination of whether prosecutorial misconduct requires a new trial is within the discretion of the trial judge, and will not be disturbed absent an abuse of discretion. *State v. Carr*, 13 Wn. App. 704, 709, 537 P.2d 844 (1975) ("[W]hether prosecutorial misconduct prejudiced a defendant's right to a fair trial can be assessed most effectively by the trial judge.").

In *Copeland*, the defendant, having been convicted of second degree rape, made a rule-based motion for a new trial after discovering that the prosecution failed to disclose that the complaining witness had a prior felony conviction for theft. 89 Wn. App. at 495-96. The trial court denied the motion. *Id.* at 495. The appeals court reversed, reasoning the State's failure to disclose the prior conviction was prejudicial because "[t]he State's case essentially relied upon the credibility of the complaining witness." *Id.* at 498. Because the State's case depended on one witness and the undisclosed impeachment evidence could have created reasonable doubt, the court concluded "[t]here is a substantial likelihood that the [prosecution's] misconduct affected the jury's verdict." *Id.*

23

As previously explained, however, Mr. Canela does not demonstrate a substantial likelihood that the nondisclosure affected the jury's verdict because Mr. Stueckle's evidence was cumulative and he could be impeached with other convictions. For the same reasons a *Brady* violation is not shown, Mr. Canela does not demonstrate that the trial court abused its discretion in denying his rule-based motion for a new trial.

III. THE PROSECUTOR'S UNOBJECTED-TO REFERENCE TO FACTS OUTSIDE THE RECORD IS NOT SHOWN TO BE PROSECUTORIAL MISCONDUCT

Mr. Canela next contends that the prosecutor's reference to Mr. Stueckle knowing Mr. Canela from time spent in jail together was prosecutorial misconduct that deprived him of his right to a fair trial.

To repeat, a defendant alleging prosecutorial misconduct must demonstrate both improper conduct and prejudice. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). It is improper for a prosecutor to advance argument on the basis of facts unsupported by the record. *State v. Reeder*, 46 Wn.2d 888, 892, 285 P.2d 884 (1955).

When the misconduct alleged is improper argument, the defendant's failure to object constitutes waiver of the error unless the comment is "so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). "'Reversal is not required if the error could have been obviated by

a curative instruction which the defense did not request.'" *Id.* (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

This case is unlike *Reeder*, in which our Supreme Court held that the prosecutor's "flagrantly made" statement of matters outside the record could not have been cured by an objection and instruction because the "harm had already been done." 46 Wn.2d at 893. In *Reeder*, the prosecutor repeatedly argued that the defendant had threatened his wife with a gun despite testimony that was only to the contrary. The prosecutor also referred to a divorce complaint that he knew the court had excluded as evidence.

Here there *was* a factual basis for the prosecutor's statement and there was no order excluding it. But the evidence had not been presented to the jury. There is a reason the introductory and closing pattern jury instructions tell jurors (and told jurors in this case) that the lawyers' statements are not evidence, and that they must disregard any remark, statement or argument that is not supported by evidence in the form of testimony and exhibits. *See* RP at 109, 390. The lawyers will always be aware of more information than comes in as evidence. When making a closing argument, a lawyer might not have clearly in mind exactly what the jury has heard. Mr. Canela's lawyer makes a valid point that information about a defendant being in jail would ordinarily be a red flag to a lawyer that the information had not been presented to the jury. But here the jury was informed that Mr. Canela had a prior felony conviction.

We are unpersuaded that the prosecutor's improper reference to a fact outside the record could not have been cured by an instruction that Mr. Canela did not request. The objection was waived.

IV.     THE RECORD IS CLEAR AS TO THE ONLY FIREARM POSSESSION AT ISSUE AT THE TRIAL, AND AMBIGUITY ABOUT WHETHER THE STIPULATION TO A PREDICATE FELONY WAS DELIVERED TO THE JURY DOES NOT REQUIRE REVERSAL

Finally, Mr. Canela makes two assignments of error specific to his firearm possession conviction. For the first time on appeal, he argues that a unanimity instruction was required. He also posits that Mr. Canela's stipulation to a predicate felony was not presented to the jury.

*Unanimity instruction*

Mr. Canela argues that the jury heard evidence that could have supported his unlawful possession of five different guns: the gun that witnesses testified was used in the shooting, the holstered gun found in the toilet of the apartment in which Mr. Canela was found, and the three additional guns discovered in a cutout behind a bathroom mirror in that apartment. He argues that without a unanimity instruction, the jury's guilty verdict might have been the result of different jurors finding that he possessed different guns.

Washington criminal defendants have a right to a unanimous jury verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). "When the State presents evidence of several acts that could form the basis of one charged count, the State must either tell the jury which act to rely on in its deliberations or the court must instruct the

jury to agree on a specific criminal act." *State v. Beasley*, 126 Wn. App. 670, 682, 109 P.3d 849 (2005). Failure to do one or the other violates the defendant's state constitutional right to a unanimous jury verdict and his United States constitutional right to a jury trial. *Id.* Because jury unanimity is a constitutional right, the alleged failure to give a unanimity instruction may be raised for the first time on appeal. *State v. Holland*, 77 Wn. App. 420, 424, 891 P.2d 49 (1995).

Mr. Canela's argument presents a novel flaw: this is not a case in which "the State . . . present[ed] evidence of numerous *separate criminal acts*," thereby requiring an election or instruction to assure jury unanimity. *State v. Petrich*, 101 Wn.2d 566, 570, 683 P.2d 173 (1984) (emphasis added), *abrogated on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). There was evidence of the existence of more than one gun, but no suggestion by the State that Mr. Canela possessed any gun other than the one he used to shoot Mr. Garcia.

The State presented no evidence or argument that Mr. Canela, while found in the apartment where three firearms were secreted in a cutout behind a bathroom mirror, possessed or constructively possessed any of those guns. The State did nothing to suggest that those guns were evidence of "separate criminal acts" by Mr. Canela.

Similarly, the State's theory that the holstered gun found in the toilet was the gun used by Mr. Canela in the shooting does not make this a multiple acts case. By analogy, a prosecution for robbing a victim of her jewels is not a multiple acts case simply because

a juror could speculate that the jewels found under the defendant's bed—which the State contends were the stolen jewels—were actually a different set of stolen jewels. A prosecution for a murder seen by eyewitnesses is not a multiple acts case because a juror could speculate that the body found in the trunk of the defendant's car—which the State contends is the murder victim—was actually a second victim.

The State makes the alternative argument that if this *was* a multiple acts case, then it made an election. We believe the problem with Mr. Canela's assignment of error is more basic. But we agree that if this can be characterized as a multiple acts case, the State's clear election was that the gun unlawfully possessed was the gun used in the shooting. "An election by the State need not be formally pleaded or incorporated into the information. As long as the election clearly identifies the particular acts on which charges are based, verbally telling the jury of the election during closing argument is sufficient." *State v. Lee*, 12 Wn. App. 2d 378, 393, 460 P.3d 701 (2020) (citation omitted).

In his opening statement, the prosecutor told the jury that one of the charges against Mr. Canela was second degree unlawful possession of a firearm. It told jurors there were three elements to the crime and said, of the first, "One, on or about March 29th, 2018 the defendant knowingly had a firearm in his possession or control. That's the gun he actually used to shoot Victor Garcia." RP at 116.

28

The same identification of the firearm possession charged was made in closing argument:

> [THE STATE:]  The second offense was unlawful possession of a firearm in the second degree.  *I think it goes without saying the defendant had a gun that day when he pointed it at Victor Garcia and shot him a number of times.  It was witnessed by the two high school boys from Delta [High School], who just happened to be in the wrong place at the wrong time, but they without a doubt saw the individual shooting Victor Garcia with a handgun.*  And that the possession or control of the firearm occurred here in the State of Washington.

RP at 400 (emphasis added).

This is not a multiple acts case; if it were, there was a clear election.

*Insufficient proof*

The last assignment of error we address is one that Mr. Canela characterizes as a challenge to the sufficiency of the evidence to prove that Mr. Canela had been previously convicted of a felony.  He contends the evidence was insufficient to prove the element because "[t]he record . . . contains no written stipulation," and, while it contains the trial court's statement that a stipulation signed by counsel and the court was marked and admitted as exhibit 50, "there is no exhibit 50" on the clerk's exhibit list.  Br. of Appellant at 42-43.  The State responds that Mr. Canela's assignment of error is solely based on the fact that "the exhibit has been lost by the clerk," which is not a sufficiency challenge.  Resp't's Br. at 35.

The parties' dispute on this score presents a factual question: was the stipulation that was signed and admitted and intended to be delivered to the jury for its deliberations *in fact* delivered to the jury for its deliberations? If the answer to that question was controlling, we would order a reference hearing. But the answer is not controlling, because the record is clear that Mr. Canela stipulated to the element and his lawyer admitted the element in closing argument.

"Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt." *State v. Johnson*, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). The court's instruction 15 provided the jury with the elements of the firearm possession charge:

> To convict the defendant of the crime of unlawful possession of a firearm in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about March 29, 2018 the defendant knowingly had a firearm in his possession or control;
>
> (2) That the defendant had previously been convicted of a felony; and
>
> (3) That the possession or control of the firearm occurred in the State of Washington.

Clerk's Papers at 29.

This court held in *State v. Wolf*, 134 Wn. App. 196, 139 P.3d 414 (2006), that when a defendant stipulates to an element of a crime, he waives the requirement that the State prove it beyond a reasonable doubt. Similar to this case, the defendant in *Wolf* was

charged as a felon in possession of a firearm and stipulated to the element that he had been convicted of a prior serious offense. *Id.* at 197. By agreement of the parties, the stipulation was presented to the jury in the form of a jury instruction. *Id.* at 202. The stipulation was also mentioned by both parties in closing argument. *Id.* It was not offered into evidence or read to the jury, however. Following conviction, the defendant appealed, arguing that because the State did not offer the stipulation into evidence, the jury lacked sufficient evidence to convict. *Id.* at 198.

This court rejected the argument in strong terms, finding that stipulations are waivers. It suggested it might have been enough for the trial court to "simply tell the jury that certain matters have been the subject of a stipulation and that the jury need not concern itself with such matters." *Id.* at 203. Satisfied that the trial court's instruction and the lawyers' references to the stipulation in argument were sufficient, if not more than sufficient, this court concluded, "It is unnecessary for us to decide how a trial court should deal with a written stipulation of the parties." *Id.* It did observe that the Ninth Circuit has held that a concession made during closing argument is a binding judicial admission that may not be challenged on appeal. *Id.* at 202 n.26 (citing *United States v. Bentson*, 947 F.2d 1353, 1355 (9th Cir. 1991)).

The Ninth Circuit has held that where there is *nothing* in the record to support the jury's awareness of a stipulation to an essential element, there may be insufficient evidence to sustain a conviction. In *United States v. James*, 987 F.2d 648, 650 (9th Cir.

31

1993), a case distinguished by this court in *Wolf*, 134 Wn. App. at 202,[5] the Ninth Circuit reversed the defendant's conviction where the record showed the parties agreed to a stipulation on an aspect of the case, but the stipulation was neither mentioned to the jury nor placed in the record. The majority of the panel reasoned that a stipulation that had not been "read to the jury or received into evidence" could not sustain a conviction, because there was "no fact in evidence that the jury could take as proved." *Id.* at 650-51. It observed that even a correct, signed stipulation would not be enough if not presented to the jury in some manner, rejecting the argument that a defendant's stipulation outside the trial record meant that "no further evidence on the issue was required." *Id.* at 650.

The majority also rejected the dissent's suggestion that there was a judicial admission by James in the form of his lawyer's agreement with the State, in opening statement and closing argument, that the case presented only "one issue." *Id.* at 651. The majority could not conclude "that by focusing his comments on the issue of identification, [the defendant's] counsel thereby admitted all other elements of the crime." *Id.* It distinguished its earlier decision in *Bentson*, which had presented a sufficient admission. *Id.* In *Bentson*—a prosecution for willful failure to file federal tax returns—the appeals court held that defense counsel's statement in closing argument,

---

[5] The *Wolf* court questioned whether *James* holds that the jury must be presented with the stipulation in some manner. 134 Wn. App. at 201. It surmised that the fundamental reason for *James*'s reversal of the conviction was because the stipulation, not being a part of the record, could not be reviewed. *Id.*

"The defense is not suggesting that returns were filed for 1983 and '84, which the Internal Revenue Service would consider to be valid documents," was a binding concession that Bentson did not file valid returns for those years. 947 F.2d at 1356.

Assuming without deciding that Mr. Canela's undisputed stipulation is not enough, and there must be something in the trial record from which the jury could consider the stipulated fact proved, we hold that the record is sufficient. In closing arguments, the prosecutor addressed the stipulated element first. He spoke to the jurors about the elements of the firearm possession charge and told them that the second element—the element "that the defendant had previously been convicted of a felony"— was stipulated:

> The second element is going to be stipulated to by the defendant. And you will actually have a document to go back into the jury room. The second element was that the defendant had previously been convicted of a felony. He's admitting that through the stipulation, a written stipulation.

RP at 403.

Defense counsel implicitly agreed. In his own closing, he told jurors:

> The attempted murder charge and the gun possession charge that is before you here have certain elements. You recall we talked about those elements. It's like chicken soup. Chicken. Broth. Water. You need those elements in order to meet the requisite crime. And like the Judge said, you're going to get some instructions.

RP at 420. He first talked to the jurors about the elements of the attempted murder charge. He then turned to the elements for the gun possession charge, and stated:

33

> *Previous felony conviction when it comes to the gun possession charge. But that's not enough.* There has to be a possession of a gun. So this particular gun came back with no prints. They arrested him. There was no gun on him. So where's the possession?

RP at 421 (emphasis added).

Because Mr. Canela stipulated that he had a prior felony, he waived the requirement that the State prove that element. His lawyer's admission in his closing argument is sufficient to satisfy any requirement that the jury have a basis in the record for considering the element proved. No reference hearing is required.

We reverse the conviction for attempted first degree murder without prejudice, affirm the conviction for second degree unlawful possession of a firearm, and remand for resentencing and other proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____          _____
Staab, J.                                                        Fearing, J.